IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tatiana Marchenko,                  :
                                    : No. 2021 C.D. 2015
                    Appellant       : Argued:  June 6, 2016
                                    :
           v.                       :
                                    :
The Zoning Hearing Board of         :
Pocono Township, Monroe             :
County, Pennsylvania, and           :
Pocono Township                     :
                                    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE FRIEDMAN                        FILED:  September 19, 2016


            Tatiana Marchenko appeals from the September 14, 2015, order of the
Court of Common Pleas of Monroe County (trial court) affirming the decision of the
Zoning Hearing Board (ZHB) of Pocono Township (Township).  The ZHB denied
Marchenko's appeal of a notice of violation (Notice).  We reverse.


            Marchenko owns a single-family dwelling (Property) located at 122
Nicholl Lane in the Township's R-1 Low Density Residential Zoning District (R-1
District).  (ZHB's Findings of Fact, Nos. 1-2; Notice at 2.)  On September 26, 2014,
Michael Tripus, the Township's zoning officer, issued Marchenko the Notice due to
Marchenko's use of the Property for commercial purposes in violation of section 402

of the Pocono Township Zoning Ordinance (Ordinance).[1]  (ZHB's Findings of Fact, No. 3.)  The Notice described Marchenko's use of the Property as vacation rentals. (*Id.*)

Marchenko appealed the Notice to the ZHB, which held public hearings on December 23, 2014, and January 27, 2015.  (*Id.*, Nos. 4, 8.)  Tripus testified that Kim Cortright, a neighboring property owner, complained to Tripus that Marchenko was renting out the Property on a nightly or weekly basis.  (*Id.*, Nos. 11-12.)  Tripus testified that he investigated Cortright's complaint and observed several out-of-state

_____

[1] Section 402 of the Ordinance governs R-1 Districts.  Section 402(B)(1) of the Ordinance lists the following as uses permitted by right:

> a. Single-family detached dwellings.
>
> b. Essential services buildings and structures (see Section 535).
>
> c. Customary accessory uses and buildings incidental to the above  permitted uses (see Section 531).
>
> d. Accessory buildings and uses customarily incidental to    Conditional  Uses approved under Number (2) below.
>
> e. Home occupations (see Section 541).
>
> f. Antennas and communication equipment buildings (see Section 522).
>
> g. Churches and related uses (see Section 528).
>
> h. Clubhouses for use by homeowners associations (see Section 536).
>
> i. Open space.
>
> j. Forestry (see Section 536).
>
> k. Keeping of equine animals (see Section 543).

vehicles in the Property's driveway on the weekend. (*Id.*, No. 13.) Tripus testified that he did not have first-hand knowledge of whether the people who rented the Property from Marchenko were considered "families" under the Ordinance. (*Id.*, No. 15.)

Marchenko testified that she acquired the Property in June 2014 and plans to live there with her extended family after they move from Russia. (*Id.*, No. 17.) Marchenko currently considers the Property to be her primary residence because she receives mail at the Property, does not own other property, and lists the Property's address on her driver's license. (*Id.*, Nos. 16, 18-20.) Marchenko rents out the Property to help defray her housing expenses. (*Id.*, No. 21.) Marchenko usually rents out the Property on weekends, which is when she works. (*Id.*, No. 24.) During the rental periods, Marchenko stays with a friend in West Orange, New Jersey, and locks her personal effects in one of the Property's bedrooms. (*Id.*, Nos. 22-23.) In the first 185 days that Marchenko owned the Property, she resided at the Property 114 days (62% of the time) and rented out the Property 71 days (38% of the time). (*Id.*, No. 26.)

The ZHB also heard testimony from four of Marchenko's neighbors: Cortright, Karen Perkowski, Roger Perkowski, and Joseph Nellegar. (*Id.*, No. 27.) The neighbors all testified that the people who rented the Property have created noise and other disturbances in the neighborhood. (*Id.*, No. 28.)

On February 25, 2015, the ZHB denied Marchenko's appeal. The ZHB noted that although section 202 of the Ordinance defines "single-family dwelling,"

neither that term nor any specifically-defined term in the Ordinance addresses the short-term renting of a single-family dwelling to a series of different families, where only one family lives at the single-family dwelling during a rental period.[2] (ZHB's Decision at 5-7.) The ZHB stated that although it agreed with Tripus' description of this use as a vacation rental, the Ordinance does not reference or define "vacation rental." (*Id.* at 7.)

The ZHB concluded that Marchenko's rental activity constituted a lodge use. (ZHB's Conclusions of Law, No. 3.) Although the Ordinance does not specifically define "lodge," the ZHB noted that section 404.B.1 of the Ordinance lists "lodge" as an example of a "transient dwelling accommodation," an undefined use that is only permitted in the RD Recreational District. (*Id.*, Nos. 5-6.) The ZHB determined that the Merriam-Webster Online Dictionary definitions of "lodge" accurately describe the use of the Property for short-term rentals.[3] (*Id.*, No. 4; ZHB's Decision at 8.) Therefore, the ZHB concluded that the rentals constituted use as a lodge and, thus, were prohibited in the R-1 District. (ZHB's Conclusions of Law, Nos. 7-8.)

---

[2] Specifically, the ZHB distinguished Marchenko's rentals from the uses of "bed and breakfast," "boarding house," and "rooming house or lodging house," as defined in section 202 of the Ordinance.

[3] The ZHB cited the following definitions of lodge as a verb: "to provide temporary quarters for . . . to rent lodgings to." (ZHB's Decision at 8 (citation omitted).) The ZHB also cited the following definition of lodge as a noun: "a house or hotel in the country or mountains for people who are doing some outdoor activity." (*Id.*)

Marchenko appealed to the trial court, which affirmed the ZHB. The trial court held that the ZHB did not err in declining to interpret the term "single-family dwelling" to include successive, short-term occupancies by different families, stating that the Pennsylvania Supreme Court's decision in *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401 (Pa. 2004), established a policy against transient uses in districts zoned for single-family dwellings. (Trial Ct. Op. at 5-7.) The trial court also determined that the ZHB did not err in concluding that Marchenko used the Property as a lodge, stating that this designation was supported by both the common and approved definition of "lodge" and the Ordinance's inclusion of "lodge" as an example of a transient dwelling accommodation. (*Id.* at 8-9.) Marchenko timely appealed to this court.[4]

First, Marchenko argues that the ZHB erred in concluding that her short-term rentals of the Property are prohibited in the R-1 District and not consistent with the single-family dwelling use. We agree.

A zoning hearing board "has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own Zoning Code." *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). Section 202 of the Ordinance defines "single-family dwelling" as "[a] detached building designed for and occupied exclusively by one family." Section 202 of the Ordinance defines "family" as:

---

[4] Where, as here, the trial court takes no additional evidence, this court's review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Segal v. Zoning Hearing Board of Buckingham Township*, 771 A.2d 90, 94 n.6 (Pa. Cmwlth. 2001).

> One or more persons, related by blood, adoption or marriage, living and cooking together in a dwelling unit as a single housekeeping unit or a number of persons living and cooking together in a dwelling unit as a single housekeeping unit though not related by blood, adoption or marriage, provided that they live together in a manner similar to a traditional nuclear family.

In order for a group of people to constitute a "family" for purposes of a single-family dwelling use, the group "must not only function as a family within that household, but in addition, the composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as *purely* transient." *Albert*, 854 A.2d at 410 (emphasis added).

Here, Marchenko uses the Property as her primary residence, resides at the Property a majority of the time, and is the only family occupying the Property when she resides there.[5] Thus, the composition of the family living at the Property is not purely transient, and the Property is primarily used as a single-family dwelling by Marchenko. The ZHB did not address Marchenko's personal use of the Property, concluding only that Marchenko's rental activity, wherein only one family occupies the Property at a time, is prohibited in the R-1 District. However, the Ordinance's definition of "single-family dwelling" does not prohibit this type of rental activity, nor is the rental activity encompassed by any other use defined by the Ordinance.

---

[5] These facts distinguish the present case from *Albert*, where all of the residents of a proposed halfway home would reside there for an average of two to six months, and the entire population of the halfway house would turn over up to six times per year. 854 A.2d at 410. Under these circumstances, the Pennsylvania Supreme Court concluded that the residents would be purely transient and, thus, could not constitute a "family" for purposes of a single-family dwelling use. *Id.* at 410-11.

Under these circumstances, the ZHB should have broadly interpreted the term "single-family dwelling" to allow this rental activity rather than straining to designate the activity as a prohibited lodge use, which the Ordinance does not define. Therefore, the ZHB erred in concluding that Marchenko's short-term rentals of the Property are prohibited in the R-1 District.

Next, Marchenko argues that the ZHB erred in concluding that her short-term rentals of the Property constitute use as a lodge, which is not permitted in the R-1 District. We agree.

In construing local zoning ordinances, courts apply the principles of the Statutory Construction Act of 1972, 1 Pa. C.S. §§1501-1991. *Patricca v. Zoning Board of Adjustment of the City of Pittsburgh*, 590 A.2d 744, 747 (Pa. 1991). Accordingly, courts shall construe the words and phrases of a local zoning ordinance "'according to rules of grammar and according to their common and approved usage.'" *Id.* at 747-48 (citation omitted). Any doubt as to undefined words or terms in a local zoning ordinance "must be resolved in favor of the landowner and the least restrictive use of the land." *Header v. Schuylkill County Zoning Hearing Board*, 841 A.2d 641, 645 (Pa. Cmwlth. 2004).

Here, the ZHB concluded that three definitions of "lodge" in the Merriam-Webster Online Dictionary accurately describe Marchenko's rentals of the Property. Two of the cited definitions relate to the term's use as a verb, and one relates to the term's use as a noun. The Ordinance uses the term "lodge" as a noun, citing it as an example of a transient dwelling accommodation; thus, the definitions of

7

lodge as a verb are inapplicable here. The cited definition of lodge as a noun, "a house or hotel in the country or mountains for people who are doing some outdoor activity," is also inapplicable. First, the ZHB did not find that Marchenko's renters use the Property as a base for outdoor activities. Second, this definition indicates that providing short-term accommodations is the *purpose* of a lodge. Here, Marchenko uses the Property as her primary residence and rents it out a minority of the time in order to defray her housing expenses. Therefore, the ZHB erred in concluding that Marchenko's short-term rentals of the Property constitute use as a lodge.

Accordingly, we reverse.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tatiana Marchenko,             :
                                      : No. 2021 C.D. 2015
                      Appellant      :
                                        :
                    v.                 :
                                        :
The Zoning Hearing Board of    :
Pocono Township, Monroe      :
County, Pennsylvania, and       :
Pocono Township              :
                                        :

## O R D E R

AND NOW, this 19<ins>th</ins> day of <ins>September</ins>, 2016, we hereby reverse the September 14, 2015, order of the Court of Common Pleas of Monroe County.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

Tatiana Marchenko,                    :
                  Appellant    :
                                      :
          v.                          :
                                      :
The Zoning Hearing Board of           :
Pocono Township, Monroe County,    :  No. 2021 C.D. 2015
Pennsylvania, and Pocono Township  :  Argued:  June 6, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: September 19, 2016


> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs.  This goal is a permissible one.  . . . .  It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9 (1974).


Ignoring that expression of what is the objective of single-family zoning, the majority incorrectly equates the term "family" in "single-family dwelling" with successive groups of people who happen to share a house for several days, as well as being in conflict with our Supreme Court's decision in *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401 (Pa.

2004). Therefore, I respectfully dissent. I, like the Board and the trial court, would hold that someone who offers a property for rent on a transient business basis is not occupying the home as a single-family dwelling, but instead is operating a business of renting out the property.

On June 24, 2014, Tatiana Marchenko (Marchenko) purchased a residential dwelling and property located in an R-1 Low Density Residential Zoning District (R-1 District) in Pocono Township (Township). To assist with paying taxes and other expenses[1], Marchenko advertised the property for short-term rental on the internet, specifically on a website known as "HomeAway," www.homeaway.com. Between June 24, 2014, and December 23, 2014, approximately five months, Marchenko rented the property to third parties on 18 separate occasions for a total of 71 days. She would have rented it for more times or days if more people wanted to rent the property as, based on experience, the house could be rented to third parties approximately 170 days on a full year's basis. Marchenko purportedly lives in the house even though she works over an hour away from the property in East Orange, New Jersey.

A Township zoning officer issued a Notice of Violation to Marchenko for using the property as a short-term rental and she appealed to the Board.

---

[1] The term "vacation rental" is neither found within nor defined by the Ordinance. Single-family dwellings are permitted by right in the R-1 District, and this term is defined in the Ordinance as "[a] detached building designed for and occupied exclusively by one family, except for a mobile home, as defined below." (Reproduced Record (R.R.) at 168a.) "Transient dwelling accommodations" such as "hotels, motels, resorts and lodges" are not permitted within the R-1 District; however, the term "lodge" is not specifically defined. (Board's February 25, 2015 Decision at p. 8.)

Neighbors testified that the renters caused noise, traffic and other disturbances in the neighborhood. The Board found that use of the property was not as a "single-family dwelling" as that term is defined but rather, due to the transient nature of the ever-changing short-term rentals to third parties, was more akin to a transient dwelling accommodation such as a lodge. Because transient dwelling accommodations are not permitted in the R-1 District, the Board affirmed the Notice of Violation. On appeal, the trial court affirmed, noting that in *Albert*, the Supreme Court of Pennsylvania "established an explicit policy regarding transient uses in districts zoned for single-family dwellings." (Trial Court's September 14, 2015 Opinion at p. 5.)

Relying on the principle that we are to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own zoning code, the majority reverses the Board and the trial court in determining that Marchenko's use of the property constituted a "lodge" rather than broadly interpreting the term "single-family dwelling" to include renting property out on a short-term basis. It arrives at the conclusion by finding that with each successive rental of the property, the renters somehow function as a "family" allowing transient uses in a single-family dwelling. This would seem to hold true even if Marchenko did not purportedly reside at the property when it was not rented. Under the majority's analysis, if the house was rented out every day of the year to a different group of occupants, each of those groups of occupants would be a "family."

I respectfully dissent because no matter how much you stretch that definition of family to benefit Marchenko, it cannot be stretched to include renting

to multiple parties for short-term stays because, as the trial court noted, our Supreme Court in *Albert* held that for a group of individuals to be a family for zoning purposes, some level of permanence is required.

In *Albert*, the property owner filed a zoning application to operate a halfway house on a 30-acre tract of land within a residential zoning district. The property owner intended to accommodate between six and 15 women at the halfway house with an average stay ranging between two and six months, meaning that the entire population could turn over as many as six times a year. The halfway house would also employ a supervisor or "housemother" to act as head of the household. The zoning officer denied the property owner's application; however, the zoning hearing board reversed this decision, concluding that the proposed use of the property was permitted under the local zoning ordinance because it qualified as a single-family detached dwelling. The trial court affirmed the granting of the application, and this Court affirmed on the basis of the trial court opinion.

Our Supreme Court reversed, holding that the halfway house could not qualify as a single-family dwelling under the ordinance because of the transient nature of its residents. In so doing, it held:

> While this Court has never before explicitly stated that transiency is incompatible with the notion of a single-family household, it is undeniable that inherent in the concept of "family" and, in turn, in the concept of a "single-family dwelling," is a certain expectation of relative stability and permanence in the composition of the familial unit. *See, e.g., Open Door Alcoholism Program, Inc. v. Bd. of Adjustment of City of New Brunswick*, 200 N.J.Super. 191, 491 A.2d 17, 21-22

(1985) ("[I]n order for a group of unrelated persons living together as a single housekeeping unit to constitute a single family in terms of a zoning regulation, they must exhibit a kind of stability, permanency and functional lifestyle which is equivalent to that of the traditional family unit."); *see also City of White Plains v. Ferraioli*, 34 N.Y.2d 300, 357 N.Y.S.2d 449, 313 N.E.2d 756, 758 (1974) ("So long as a group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living, it conforms to the purpose of the ordinance."); *Planning and Zoning Comm'n of the Town of Westport v. Synanon Foundation, Inc.*, 153 Conn. 305, 216 A.2d 442, 443 (1966) (concluding that "ever-changing" group of individuals who slept, cooked, ate, worked, and carried on activities in a dwelling did not come within the meaning of the word "family.") Indeed, one of the many benefits of single-family zoning districts is that they create residential neighborhoods in which the residents may develop a sense of community and a shared commitment to the common good of that community. Without some level of stability and permanence in the composition of the groups residing in such residential districts, this goal is necessarily subverted. . . . Accordingly, we conclude that in order to qualify as a "single housekeeping unit," a group of individuals in a single household must not only function as a family within that household, but in addition, the composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as purely transient.

854 A.2d at 452-53.

Our Supreme Court noted that with average stays of only two to six months, the residents of the halfway house would change on a fairly regular basis, and that "[t]his level of instability and transience is simply incompatible with the single-family concept." *Id.* at 454 (citing *Open Door*, 491 A.2d at 22; *Act I, Inc. v.*

DRP - 5

*Zoning Hearing Board of Bushkill Township*, 704 A.2d 732, 735 (Pa. Cmwlth. 1997); *Lakeside Youth Service v. Zoning Hearing Board of Upper Moreland Township*, 414 A.2d 1115, 1116 (Pa. Cmwlth. 1980)).

The level of instability and transience in the present case is even greater as Marchenko's property was listed for rent on a daily basis. Over the course of five months, she admittedly rented the property 18 separate times. During the peak vacation period, the property was rented for up to 21 days per month. The issues created by this high level of transience and instability are borne out by the testimony of Marchenko's neighbors that they had to call the police due to loud noise late at night, as many as 17 cars parked on the property at one time, and they had to ask the renters to quiet down on several occasions, once when individuals were setting off fireworks while intoxicated. These facts support the Board's finding that Marchenko's use of the property did not comply with that of a single-family dwelling and, therefore, was prohibited in the R-1 District.

Accordingly, for the foregoing reasons, I respectfully dissent.

DAN PELLEGRINI, Senior Judge