# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George A. Reihner and     :
Judith A. Reihner, his wife,    :
            :
      Appellants   :
            : No. 256 C.D. 2017
     v.        : Argued: September 11, 2017
            :
The City of Scranton Zoning   :
Hearing Board      :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
       HONORABLE JOSEPH M. COSGROVE, Judge
       HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**      **FILED: December 8, 2017**

    George and Judith Reihner appeal from an order of the Court of Common Pleas of Lackawanna County that affirmed a decision of the City of Scranton (City) Zoning Hearing Board (Board). In its decision, the Board denied the Reihners' appeal of a Notice of Violation (NOV) issued by the City's Zoning Code Enforcement Officer for illegal operation of a Bed and Breakfast (B&B) at the Reihners' home in violation of the City's Zoning Ordinance (Ordinance). We conclude that the Reihners have demonstrated that ambiguity exists in the definition of "Bed and Breakfast Use" in the Ordinance such that we must interpret the language of the Ordinance in favor of the landowners. We therefore reverse the order of the Court of Common Pleas.

    The Reihners are husband and wife who own and reside in a single-family home located at 1010 Electric Avenue in the City (Property), which is in the

R-1A district, the "Medium Low Density Residential District." (Board Decision Finding of Fact (F.F.) ¶3; Ordinance § 301.A, Reproduced Record (R.R.) 228a.) The R-1A district permits various residential uses, including Single Family Detached and Semi-Detached Dwellings and Group Homes, and certain agricultural and commercial uses, but does not permit the "Bed and Breakfast Use." (Ordinance § 306 (Table of Permitted Uses).) The "Bed and Breakfast Use" is defined in Section 202 of the Ordinance as follows:

> The use of a single family detached dwelling and/or accessory structure which includes the rental of overnight sleeping accommodations and bathroom access for a maximum of 10 temporary guests at any one time (except as otherwise provided for in this Ordinance), and which does not provide any cooking facilities or provision of meals for guests other than breakfast. This use shall only include a use renting facilities for a maximum of 14 consecutive days to any person(s) and shall be restricted to transient visitors of the area.

(Ordinance § 202, R.R. 201a.)

On or about May 18, 2016, Jack Sweeney, the Zoning Code Enforcement Officer, issued the NOV to the Reihners following the receipt of complaints from several of the Reihners' neighbors. (Board Decision F.F. ¶1; Aug. 10, 2016 Board Hearing Transcript (H.T.) at 26-27, R.R. 34a-35a; Joint Ex. 1, R.R. 141a.) The NOV stated that the Reihners were operating a B&B in the R-1A district in violation of Section 306 of the Ordinance and they were required to eliminate the offending activity within ten days of receipt of the order. (Joint Ex. 1, R.R. 141a.) The Reihners promptly appealed the NOV, and a hearing was held before the Board on August 10, 2016. At the hearing, Sweeney testified that he spoke to the Reihners after receiving the complaints and they admitted that they were receiving guests at

2

their house who had booked through the Airbnb website,[1] but they maintained that they were not offering breakfast to the guests. (H.T. at 26-27, R.R. 34a-35a.)

Judith Reihner testified that she and her husband, along with the youngest of their four children, live in a three-story Victorian house on the Property. (H.T. at 36, R.R. 44a.) Mrs. Reihner testified that she started using Airbnb for lodging when visiting her son while he attended Stanford University and continued using it for her visits to California over the course of several years. (*Id*. at 38-39, R.R 46a-47a.) After renovating the third floor of their house, the Reihners began offering rooms for rent on Airbnb in March 2016. (*Id*. at 39-40, R.R. 47a-48a.) The Reihners offer three bedrooms on the third floor for rent through Airbnb; the third floor has three bedrooms and one shared bathroom with a door separating the second and third floors that can be closed to offer privacy. (*Id*. at 36-37, 53, R.R. 44a-45a, 61a.) The Reihners also occasionally offer one bedroom for rent on the second floor to return guests whom they already know well. (*Id*. at 53, R.R. 61a.) All bedrooms are offered for a maximum four-night stay. (*Id*. at 72, R.R. 80a.) Mrs. Reihner stated that she does not serve food and she does not consider her home to be a B&B. (*Id*. at 63-64, 80, R.R. 71a-72a, 88a.) Mrs. Reihner testified that an occupancy tax is deducted from each one of her guests' bills and is remitted directly to the Commonwealth pursuant to a policy that went into effect on July 1, 2016. (*Id*. at 51-52, R.R. 59a-60a; Appellants Ex. 3, R.R. 148a.) Mrs. Reihner testified that the City has not enacted a tax applicable to Airbnb stays and therefore she does not pay a tax to the city, nor has she registered with Lackawanna County as a hotel. (H.T. at 53-54, 86-87, R.R. 61a-62a, 94a-95a.)

---

[1] https://www.airbnb.com (last visited, October 11, 2017).

At the hearing, several neighbors, including members of the Greenridge Neighborhood Association (Greenridge), which intervened below and filed a brief in this appeal, testified in opposition to the Reihners' use of the Property as an Airbnb establishment. The neighbors cited concerns related to the presence of strangers in the neighborhood, parking in front of neighbors' houses, a potential reduction in the value of nearby homes, and the safety of the children who play in the neighborhood. (H.T. at 90-127, R.R. 98a-135a.)

At the conclusion of the hearing, the Board voted to uphold the NOV. In an undated decision, the Board stated its conclusion that "the activities described by Judith Reihner as to what was taking place at her house through AIRBNB fit the Ordinance definition of a Bed and Breakfast Use." (Board Decision, Conclusion of Law ¶17.) The Reihners appealed the Board's decision to the Court of Common Pleas, which heard the appeal without taking additional evidence. The lower court determined that the testimony that the Reihners use their single-family dwelling to rent accommodations to overnight guests for a maximum four-night stay clearly meets the definition of a "Bed and Breakfast Use." (Court of Common Pleas Opinion at 4-5.) Though the testimony was uncontroverted that the Reihners do not offer breakfast at their house, the lower court concluded that there is no requirement in the Ordinance that breakfast be served and instead the definition of "Bed and Breakfast Use" states only that no other meal can be provided besides breakfast. (*Id*. at 4.)

Where, as here, the trial court has not taken additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh,* 672 A.2d 286, 288-89 (Pa. 1996); *Nowicki v.*

*Zoning Hearing Board of Borough of Monaca*, 91 A.3d 287, 291 n.1 (Pa. Cmwlth. 2014). When construing local zoning ordinances, courts are guided by the principles of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Patricca v. Zoning Board of Adjustment of the City of Pittsburgh*, 590 A.2d 744, 747-48 (Pa. 1991) (citing 1 Pa. C.S. § 1903(a)).

The traditional rule of deference to zoning hearing board interpretations of their ordinances, however, is balanced by the principle that any ambiguity and conflict in the language of the ordinance must be resolved in favor of the landowner and the least restrictive use of the land. *Latimore Township v. Latimore Township Zoning Hearing Board*, 58 A.3d 883, 888 (Pa. Cmwlth. 2013); *see also* Section 603.1 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by the Act of Dec. 21, 1988, P.L. 1329, 53 P.S. § 10603.1 ("In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction."). Moreover, "[w]hile the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit." *Borough of Fleetwood v. Zoning Hearing Board of the Borough of Fleetwood,* 649 A.2d 651, 656 (Pa. 1994); *see also Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). This Court has held that it is an abuse of discretion for a zoning hearing board to narrow the terms of an

5

ordinance and further restrict the use of a property. *Riverfront Development Group,* 109 A.3d at 366; *Church of the Saviour v. Tredyffrin Township Zoning Hearing Board,* 568 A.2d 1336, 1338 (Pa. Cmwlth. 1989).

The Reihners argue that the Board and the Court of Common Pleas determined that the Reihners operate a B&B simply based on the name of the Airbnb website.[2] The Reihners argue that the lower tribunals ignored the language in the definition that the establishment "does not provide any cooking facilities or provision of meals for guests other than breakfast." (Ordinance § 202, R.R. 201a.) The Reihners contend that the holding by the Court of Common Pleas that the Ordinance does not require that breakfast be served to fall under the "Bed and Breakfast Use" definition ignores the conjunctive "and" in "Bed and Breakfast Use" which signifies that the two nouns "bed" and "breakfast" must both be present in order for an establishment to be considered a B&B. The Reihners assert that their guests had access to their kitchen to prepare any meal or snack at any time of day and that the Reihners did not prepare breakfast, or any other meal, for their guests. Because they did not serve breakfast and instead offered cooking facilities to their guests throughout the day, the Reihners maintain that they did not engage in a "Bed and Breakfast Use" on their Property and therefore the NOV was issued in error.

The Board argues that the Reihners' interpretation of the Ordinance to require that the purveyor of a B&B serve breakfast is contrary to the definition of a "Bed and Breakfast Use" which does not mandate that breakfast is served to guests and instead only permits the service of breakfast but not any other meals. The Board further disputes the Reihners' argument that it is not a B&B under the Ordinance,

---

[2] The original name of the company was "AirBed & Breakfast." Walter Isaacson, *Resistance is Futile*, New York Times, June 25, 2017, at BR1.

contending that the fact that rooms are booked through the Airbnb website shows that the Property is a B&B since Airbnb website was designed to market B&Bs.

As noted in the parties' briefs, this Court has ruled in several recent decisions that a zoning hearing board misconstrued the terms of its zoning ordinance to prohibit property owners from using online platforms to offer their homes as vacation or short-term rentals. In *Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947 (Pa. Cmwlth. 2016), the owner of a single-family dwelling in a low density residential district offered her entire home for rent on the HomeAway website[3]; during the rental periods, which constituted 71 of the first 185 days that the house was listed on the website, the owner would stay at a friend's house in New Jersey. 147 A.3d at 948-49; *id*. at 952 (Pelligrini, J., dissenting). The zoning hearing board found that the house was being used for commercial purposes as a "lodge" in violation of the zoning ordinance. *Id*. at 949. This Court held that the primary use of the property was as a single-family residence for the owner, and the ordinance's definition of "single-family residence" did not prohibit the type of rental activity on the property. *Id*. at 950. As the zoning ordinance did not prohibit short-term rentals in the definition of single-family dwelling and the property did not satisfy the dictionary definition of a "lodge," which required that the purpose of the lodge was as a base for outdoor activities, the Court reversed the notice of violation. *Id*. at 950-51.

In *Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408 (Pa. Cmwlth. 2017), the property owner bought a single-family home with the intention of using it as a primary residence but was unable to because she could not sell her other house; other than the approximately one week per month that the owner

---

[3] https://www.homeaway.com (last visited October 11, 2017).

7

stayed at the house and visits by other family members, she offered out the entire house for rent through websites for minimum stays of two nights. 154 A.3d at 410-11. The zoning hearing board determined that the property was a "tourist home" under the zoning ordinance, which was not permitted within the special and recreational district in which the property was located. *Id.* at 411. This Court held that the property was not being used as a "tourist home," defined to include rentals of individual rooms on a nightly basis, because the owner was periodically renting out the entire home, which "bears no relation to the bedroom-by-bedroom rental that is the hallmark of the tourist home." *Id.* at 414-15. The Court explained that

> AirBnB has expanded the possible uses of a single-family dwelling, and the Township can address these new uses in the Zoning Ordinance. However, amendments cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of "tourist home."

*Id.* at 415. Furthermore, the Court concluded that the property fell within the definition of a "single-family dwelling" of "a detached building designed for or occupied exclusively by one family" – though the property was not exclusively occupied by one family, the property did satisfy the alternative condition of having been *designed for* one family. *Id.* Thus, the Court reversed the zoning hearing board's affirmance of the enforcement notice against the property owner.

In *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 164 A.3d 633 (Pa. Cmwlth. 2017), the property owner, who lived in New York City, owned the subject property through a limited liability company and rented the property for short-term stays as part of a larger business enterprise involving multiple other properties. *Id.* at 635, 641. The property was located in a zoning district that only permitted single-family residential uses, and the property owner

8

was issued an enforcement notice for use of the property as a "Hotel and/or other types of transient lodging, Rental of Single Family Residential Dwelling for transient tenancies." *Id*. at 635-37. The "hotel" use was defined in the ordinance but was ruled inapplicable because it required that at least ten rooms were offered for rent and the property only contained six rooms, while the terms "transient lodging" and "transient tenancies" were undefined in the ordinance. *Id*. at 637, 640, 642. This Court followed the "controlling law" of *Shvekh* and *Marchenko*, and the bar on zoning hearing boards "shoe-horning" a new, unanticipated use into an existing defined term of the ordinance, stating that "the Board here was required to apply the terms of the Ordinance *as written*, rather than deviating from those terms based on unexpressed policies of the Township regarding permitted uses." *Id*. at 641-42 (quoting *Shvekh*, 154 A.3d at 415) (emphasis in original). Because the property owner demonstrated that ambiguity existed in the language of the ordinance, the Court concluded that it was required to interpret the language of the ordinance in favor of the landowner and against any implied extension of a restriction on the use of the landowner's property. *Id*. at 642.

This case is factually distinguishable from *Marchenko*, *Shvekh* and *Slice of Life*. In those three cases, the property owners rented out the entirety of their home, either during periods when they were not present at the house or exclusively as in *Slice of Life*, while here the Reihners continually reside in their home during Airbnb guest stays. Furthermore, unlike *Marchenko*, *Shvekh* and *Slice of Life*, only the present matter before this Court presents the issue of whether the property owners have engaged in a "Bed and Breakfast Use." Nevertheless, the controlling law in this trio of cases also applies here. Like the present case, each of *Marchenko*, *Shvekh* and *Slice of Life* concerns an attempt by a zoning hearing board to apply the zoning

9

ordinance to a new form of economic activity occurring in single-family homes that was facilitated and expanded by internet services like Airbnb. However, in each of those cases, this Court ruled that the zoning board overstepped its authority under its ordinance, "advance[ing] a new and strained interpretation of its zoning ordinance in order to effect what it would like the ordinance to say," "shoe-horning" the use in question into an unsuitable existing category of uses in the ordinance. *Shvekh*, 154 A.3d at 414-15.

Our review of the present case accordingly requires that we determine whether the Ordinance unambiguously prohibits the type of rental activity occurring on the Property that would allow the City to constrain the Reihners' use of their Property. We conclude that it does not. Pursuant to the definition of a "Bed and Breakfast Use" in the Ordinance it is clear that the Property is a single-family dwelling in which the Reihners rent out rooms, with bathroom access, to no more than 10 overnight guests at a time. Therefore, the sole question is whether the Reihners' use of the Property satisfies the remaining requirement of the "Bed and Breakfast Use" that the Property "does not provide any cooking facilities or provision of meals for guests other than breakfast." (Ordinance § 202, R.R. 201a.) The Reihners assert that this statement means that the establishment must provide either breakfast or access to cooking facilities at which the guest can prepare her own breakfast. The Board argues that the interpretation of this definition by the Court of Common Pleas is correct that a "Bed and Breakfast Use" does not require service of breakfast or access to cooking facilities to prepare breakfast, but instead only prohibits the purveyor of a B&B from serving any other meal besides breakfast. We conclude that the Reihners' interpretation of the Ordinance is more reasonable than that of the Board. Quite simply, the Court of Common Pleas reads the term

10

"breakfast" out of the Ordinance. Moreover, we disagree with the argument by the Board that the Reihners' use of a website called "Airbnb" supports the case that they were operating a B&B. As this Court explained in *Shvekh*, Airbnb and similar "sharing economy" websites have expanded the possible uses of a single-family dwelling and have created new types of economic activity that bear similarities to but do not entirely fit within traditional categories of lodging uses set forth in zoning ordinances. Furthermore, Mrs. Reihner testified at the Board hearing that Airbnb is different than a normal hotel or lodging reservation website that does not permit anonymous listings but instead requires that each user is verified by Airbnb with driver's license, passports, credit cards or other identifying documents. (H.T. at 41-42, 67-68, R.R. 49a-50a, 75a-76a; Appellants Ex. 1, R.R. 142a.) In addition, Mrs. Reihner explained that Airbnb users have created a welcoming community focused on "building relationships" and "exchange," established on a "system of trust" and reinforced by the reviews that guests and hosts leave for each other on the website. (H.T. at 39, 41-42, 84, R.R. 47a, 49a-50a, 92a.)

Because the Reihners have proven that ambiguity exists in the language in the Ordinance, we are required to interpret the language of the Ordinance in favor of the landowner's "widest use of the land" and against any implied extension of the Ordinance's restrictions on the use of property based on the policy preferences of the Board. *Fidler v. Zoning Board of Adjustment of Upper Macungie Township*, 182 A.2d 692, 695 (Pa. 1962); *see also Slice of Life*, 164 A.3d at 640. The record is devoid of any indication that the Reihners served breakfast to any of their guests or did not provide cooking facilities for them to prepare their own breakfast and therefore we must conclude that the NOV alleging that the Reihners operated an illegal B&B was issued in error. Despite our ruling here, we note that the City may,

11

through its legislative authority, fill in the gap in the Ordinance to address the complained of activity occurring on the Reihners' property. As the Court cautioned in *Slice of Life*, "there is nothing to constrain the [City] from enacting amendments to the Ordinance which would protect property owners' constitutional rights while providing the specific definitional guidelines where they are now lacking." 164 A.3d at 646.

The Board and Greenridge present several additional arguments in this appeal to support the validity of the NOV apart from the conclusion that the Reihners were operating a B&B under the Ordinance. The Board argues that, even accepting that Airbnb rental does not qualify as operation of a B&B, the Reihners would still be operating a prohibited use in the R-1A district pursuant to Section 105.B of the Ordinance, which provides:

> If a use clearly is not permitted by right, by condition or by special exception by this Ordinance within <u>any</u> Zoning District in the City, the use is prohibited in the City, except the applicant may apply to the Zoning Hearing Board [for a permit to engage in such use].

(Ordinance § 105.B (emphasis in original).) Greenridge argues that the Reihners' rental of rooms through Airbnb is an economic activity which is an "incompatible intrusion[]" in a desirable residential neighborhood of the City, contrary to the stated purposes and objectives of the Ordinance.[4] Greenridge further argues that the use of the Property as an Airbnb does not fall within the definition of a "Single Family Detached Dwelling" under the Ordinance, which is a permitted use in the R-1A district, because the Reihners are continually renting out rooms to other individuals

---

[4] Section 101 of the Ordinance provides that "[t]his Ordinance is hereby adopted...to protect property values and protect existing residential neighborhoods from incompatible intrusions." (Ordinance § 101.)

who are not a part of their family unit so more than one family resides at the Property any time a room is rented.[5]

None of these other provisions of the Ordinance, however, was cited as being the basis for the NOV, and neither the Board nor the Court of Common Pleas ruled that the Reihners violated any other portion of the Ordinance except the prohibition on the operation of a B&B in the R-1A district. Indeed, while there was discussion at the Board hearing regarding whether the Reihners would be permitted under the Ordinance to rent out rooms as a lodging house for up-to-four students at a nearby university as some other residents in the neighborhood have done, the City Solicitor made clear that the only issue to be addressed at the hearing was whether the activities occurring at the Property qualified it as a B&B under the Ordinance. (H.T. at 55-57, 77-78, R.R. 63a-65a, 85a-86a.) Accordingly, the additional arguments made by the Board and Greenridge are outside of the scope of this appeal.

The order of the Court of Common Pleas is reversed.

**JAMES GARDNER COLINS, Senior Judge**

---

[5] A "Single Family Detached Dwelling" is defined as "[o]ne dwelling unit in 1 building accommodating only 1 family and having open areas on all sides." (Ordinance § 202, R.R. 206a.) A "Family" is defined as "[o]ne or more persons living in a single dwelling unit and functioning as a common household unit sharing household expenses and sharing joint use of the entire dwelling unit... A family shall not include more than 4 persons who are not 'related' to each other...." (*Id.*, R.R. 207a.)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George A. Reihner and        :
Judith A. Reihner, his wife,      :
                                   :
               Appellants     :   No. 256 C.D. 2017
                                     :
         v.                       :
                                     :
The City of Scranton Zoning     :
Hearing Board                   :

# **O R D E R**

AND NOW, this 8th day of December, 2017, the order of the Court of Common Pleas of Lackawanna County is hereby REVERSED.

_____
**JAMES GARDNER COLINS, Senior Judge**