# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John P. Hoefling and     :
Susan E. Hoefling,      :
           :
    Appellants    :
           :
    v.       : No. 1437 C.D. 2017
           : Argued: September 12, 2018
Zoning Hearing Board of    :
Monroe Township and     :
Monroe Township      :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**      **FILED: October 25, 2018**

John P. and Susan E. Hoefling appeal from an order of the Court of Common Pleas of Cumberland County that affirmed a decision of the Zoning Hearing Board of Monroe Township (Board). In its decision, the Board denied the Hoeflings' appeal of an enforcement notice issued by the Monroe Township (Township) Zoning Officer, which required the Hoeflings to cease and desist renting out their home on a short-term basis because such use violated the Township Zoning Ordinance (Ordinance). For the reasons set forth below, we reverse the order of the Court of Common Pleas.

In 2006, the Hoeflings, a married couple, purchased property in the Township at 1453 Cockley's Meadow Drive (Property), which is located in the

Township's Suburban Residential (R-1) zone. (Board Decision ¶¶1, 3, 7.) The Hoeflings work full-time jobs in the Washington, D.C. area and maintain their primary residence in Falls Church, Virginia where they receive real estate tax notices relating to the Property. (*Id*. ¶¶1, 7, 11.)

Beginning in 2007 or 2008, the Hoeflings began renting the Property on a short-term basis to overnight guests. (Board Decision ¶8.) Around that time, the Hoeflings formed a limited liability company in Pennsylvania, with the address of record at the Property, based on professional advice Mr. Hoefling received relating to the payment of Pennsylvania taxes. (*Id*. ¶9.) The Hoeflings have always rented out the entire home, rather than a room-by-room rental, and they do not provide any service to the renters, such as meals or daily cleanings, during the course of the rental. (Dec. 15, 2016 Board Hearing Transcript (H.T.) at 23-24, 64, 80, Reproduced Record (R.R.) 83a-84a, 124a, 140a.) Each renter of the Property signs a short-term lease agreement that identifies the renters as "tenants." (H.T. at 71, R.R. 131a.) The Hoeflings charge a $130 cleaning fee for each rental and they employ an individual to clean the Property, including the linens that the guests have utilized, after each rental. (Board Decision ¶10; H.T. at 74-75, R.R. 134a-35a.)

The Hoeflings have utilized at least three websites devoted to vacation rentals – VRBO (Vacation Rentals by Owner), Vacation Home Rentals and Home Away – to advertise the availability of the Property for short-term rental. (Board Decision ¶8; H.T. at 15, 21-22, R.R. 75a, 81a-82a; Hearing Exs. A-3, T-4, T-5, R.R. 199a-201a, 213a-235a.) The Property is described on these websites as being an ideal location for outdoor activities such as fly fishing, boating, hiking, skiing and tubing. (Hearing Exs. A-3, T-4, T-5, R.R. 199a, 215a, 223a.) The website listings each indicate that the Property has three bedrooms with a two-night minimum stay,

but differ on the maximum number of guests of either six, eight or ten depending on the site. (*Id.*, R.R. 200a, 215a, 223a.)

In 2016, the Property was rented on a short-term basis for a total of 110 days by about 20 different renters, with an average stay between 5 to 7 days. (Board Decision ¶10; H.T. at 23, R.R. 83a.) The Hoeflings do not visit the Property while it is rented, but do stay there approximately one or two weekends per month and on holidays when the Property is not being rented. (Board Decision ¶10.) In addition, Mr. Hoefling's parents own the house next door to the Property, his extended family has resided on Cockley's Meadow Drive for 46 years and family reunions are regularly hosted at the Property and other homes on the street. (*Id.* ¶11; Board H.T. at 62-63, R.R. 122a-23a.)

The October 25, 2016 enforcement notice stated that the use of the Property as overnight accommodations for guests was not consistent with the definition of a single-family dwelling and was not permitted in the Suburban Residential Zone as provided in Sections 112 and 202 of the Ordinance. (Hearing Ex. T-6, R.R. 237a.) The notice further ordered the Hoeflings to cease and desist using the Property as a "lodging house." (*Id*.) The Hoeflings appealed the enforcement notice to the Board, which conducted a hearing on December 15, 2016. Mr. Hoefling testified at the hearing; in addition, the Hoeflings introduced statements from 12 neighbors that they did not object to the use of the Property for short-term rentals. (H.T. at 68, R.R. 128a; Hearing Ex. A-1, R.R. 184a-95a.) The Zoning Officer who issued the notice testified at the hearing that he investigated the Property after receiving a complaint from Joe Shovlin, a neighbor of the Hoeflings, and determined that the short-term rental activity on the Property constituted a lodging house use in contravention of the applicable zoning. (H.T. at 46-53, R.R.

3

106a-13a.) Mr. Shovlin, who has rented a house for six years on Cockley's Meadow Drive two doors down from the Hoeflings, also testified at the hearing regarding issues he had experienced with renters at the Property, including bonfires, unruly off-leash dogs, drunkenness, rudeness, renters knocking on his door and walking into his garage at night and as many as 30 cars parked on the street on one occasion. (H.T. at 30-38, R.R. 90a-98a.)

The Board issued its decision denying the Hoeflings' appeal of the enforcement notice on December 28, 2016. In its decision, the Board stated that the issue before it was whether the use of the Property for short-term rental by overnight guests unrelated to the Hoeflings was a permitted "single-family detached dwelling" use, which is permitted within the Suburban Residential zone under the Ordinance. (Board Decision at 6; Ordinance § 202.2, R.R. 400a-01a.) The Board concluded that the intent of the Township's governing body to exclude the Hoeflings' use of the Property was not in doubt. (Board Decision at 6, 9.) The Board determined that the Ordinance's list of excluded uses in the definition of a "dwelling," which prohibited lodging houses and similar uses "offering overnight accommodations," should broadly be viewed to exclude all transient uses in which multiple individuals or groups occupy the same dwelling rather than the permanent, continuous occupation by one family. (*Id.* at 6-9; Ordinance § 112.C, R.R. 368a.) The Board concluded that the Hoeflings' primary use of the Property was for the provision of overnight accommodations for transient guests and therefore the Property was not being used in accordance with permitted uses in the Suburban Residential zone. (Board Decision at 8, 10.)

The Board finally discussed our Supreme Court's decision in *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401 (Pa. 2004), in

4

which the Court held that the residents of a halfway house did not have the required stability and permanency that is inherent in the traditional concept of a family that forms the foundation of single-family zoning districts. The Board contrasted *Albert* with this Court's decision in *Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947 (Pa. Cmwlth. 2016), holding that the owner of a single-family dwelling offering her entire home for rent on a website designed to advertise vacation home rentals was not operating a "lodge" pursuant to the dictionary definition of that term, which required that a lodge serve as a base for outdoor activities. The Board concluded that *Albert* was far more relevant of a precedent to the instant case because the Hoeflings' primary residence was in Virginia and the nights the Property was used for short-term rental greatly outnumbered the nights that the Hoeflings stayed there. (Board Decision at 10.)

The Hoeflings appealed the Board decision to the Court of Common Pleas, which heard oral argument from the parties. On September 12, 2017, the lower court issued an opinion and order affirming the Board decision. In its opinion, the court described the case as "difficult" but concluded that the prohibited uses in the Suburban Residential zone were not confined to those specifically enumerated and instead that the Ordinance intended to broadly exclude short-term lodging in exchange for remuneration. (Court of Common Pleas Opinion at 1, 10-11.) The court further determined that the record before the Board demonstrated that, unlike in *Marchenko*, the primary use of the Property was as a commercial short-term rental enterprise, which was contrary to the benefits of single-family zoning as described in *Albert* and intended by the drafters of the Ordinance. (*Id*. at 11.) The Hoeflings filed a timely notice of appeal of the September 12, 2017 order.

5

The Hoeflings argue on appeal that the Board erred in concluding that the Ordinance expressly prohibits the short-term rental of a single-family home within the Suburban Residential zone.[1]  The Hoeflings contend that each of the specifically proscribed uses, a list that includes hospitals, hotels, boarding houses, rooming houses and lodging houses, share the common characteristic of the rental of individual rooms for overnight stays to guests or patients.  According to the Hoeflings, the rental of an entire house to one group, the use at issue here, is qualitatively different than the prohibition in the Ordinance.  At the very least, the Hoeflings argue, the Ordinance is ambiguous and does not expressly prohibit their use of the Property, and therefore, pursuant to our rules of construction, the Ordinance should be interpreted to allow the widest use of the land.  The Hoeflings find support from *Marchenko* and cases following it in which this Court has rejected efforts by a zoning hearing board to prohibit short-term rentals in private homes where the prohibitions do not explicitly cover such conduct.  The Hoeflings argue that the Supreme Court decision in *Albert* is distinguishable because the Hoeflings rent out their entire house to a single group, rather than a room-by-room rental to different individuals, and the Hoeflings regularly occupy the Property when it is not rented.

This appeal requires our interpretation of the Ordinance, particularly the exclusions from the definition of a "dwelling," which are prohibited uses within the Township's Suburban Residential zone.  When construing zoning ordinances,

---

[1] Where, as here, the trial court has not taken additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Larsen v. Zoning Board of Adjustment of City of Pittsburgh,* 672 A.2d 286, 288-89 (Pa. 1996); *Nowicki v. Zoning Hearing Board of Borough of Monaca*, 91 A.3d 287, 291 n.1 (Pa. Cmwlth. 2014).

courts are guided by the principles of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Patricca v. Zoning Board of Adjustment of City of Pittsburgh*, 590 A.2d 744, 747-48 (Pa. 1991) (quoting 1 Pa. C.S. § 1903(a)). The Ordinance in this matter provides that, to the extent words and phrases are not defined therein, they "shall be presumed to be used in their ordinary context" and "shall be defined by definitions presented in an unabridged dictionary of the English language." (Ordinance § 112.A, R.R. 359a.)

A zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *In re Jerrehian*, 155 A.3d 674, 682 (Pa. Cmwlth. 2017); *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999). The deference owed to a board's interpretation of its ordinance, however, must be balanced against the countervailing principle that any ambiguity and conflict in the language of the ordinance must be resolved in favor of the landowner. *Jerrehian*, 155 A.3d at 683; *Latimore Township v. Latimore Township Zoning Hearing Board*, 58 A.3d 883, 888 (Pa. Cmwlth. 2013). This latter principle is grounded in Section 603.1 of the Municipalities Planning Code (MPC),[2] which provides that:

> [i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the

---

[2] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

7

property owner and against any implied extension of the restriction.

53 P.S. § 10603.1; (*see also* Ordinance § 104, R.R. 357a (identical text to Section 603.1 of the MPC).) Furthermore, "[w]hile the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit." *Borough of Fleetwood v. Zoning Hearing Board of Borough of Fleetwood,* 649 A.2d 651, 656 (Pa. 1994); *see also Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015).

The Property lies within the Suburban Residential zone, which "is meant to accommodate suburban residential growth within the Township." (Ordinance § 202.1, R.R. 400a.). Permitted uses within the Suburban Residential zone include single-family detached dwellings; the Suburban Residential zone does not specifically authorize the rental of all or a portion of a single-family detached dwelling aside from a bed-and-breakfast use, which is a conditional use in this district. (*Id.* § 202.2, R.R. 400a-01a.) A "single-family detached dwelling" is defined in relevant part as "[a] freestanding building containing one dwelling unit for one family." (*Id.* § 112.C, R.R. 368a.) A "dwelling" is defined as:

> Any building or portion thereof designed and used exclusively for residential occupancy, including those listed below, but not including hospitals, hotels, boarding, rooming and lodging houses, institutional houses, tourists courts, and the like, offering overnight accommodations for guests or patients.

(*Id.* § 112.C, R.R. 368a.)

8

In the October 25, 2016 enforcement notice, the Hoeflings were cited for operating a "lodging house" and offering "overnight accommodations for guests" in violation of the definition of a dwelling in Section 112 of the Ordinance. (Hearing Ex. T-6, R.R. 237a.) The term "lodging house" is not defined in the Ordinance, and the Board therefore looked to dictionary definitions that defined this term as "a house where lodgings are provided and let" and "houses containing furnished apartments which are let out by the week or by the month without meals or with breakfast simply." (Board Decision at 7-8 (quoting Webster's New Collegiate Dictionary (1980 ed.) and Black's Law Dictionary (4th ed.)).) In addition, the Board cited dictionary definitions of "lodging," which include "a room in the house of another used as a place of residence" and "[h]abitation in another's house, furnished or unfurnished, occupied for habitation." (*Id*.) The Board concluded that what was common to the definitions of lodging and lodging house when viewed in conjunction with the other specifically excluded uses in the definition of a dwelling was the transient habitation in a residence owned by another. (*Id*. at 8-9.) Concluding that the primary use of the Property was to provide temporary lodging to frequently rotating groups of individuals, the Board concluded that the Property fell within the excluded uses. (*Id*. at 8-10.)

We conclude that the Board erred in holding that the Ordinance unambiguously prohibits the short-term rental of an entire home in the Suburban Residential zone. The definition of a "dwelling" in the Ordinance identifies seven prohibited uses: lodging houses, rooming houses, boarding houses, hospitals, hotels, tourist courts and institutional houses. It is readily apparent to this Court that each of these examples of prohibited uses shares the common characteristic that they relate to the rental of a room within a larger dwelling unit, which results in

occupancy by multiple families or unrelated individuals within one unit. None of these uses involves the rental of an entire dwelling unit to one individual or group. The fact that these uses relate to the rental of a part of a dwelling rather than the whole can be seen from the definitions of "lodging house" and "lodging" that the Board quoted in its decision, which include "houses containing furnished apartments which are let out by the week or by the month" and "a room in the house of another used as a place of residence." (Board Decision at 7-8 (quoting Webster's New Collegiate Dictionary (1980 ed.) and Black's Law Dictionary (4th ed.)).) Similarly the definitions of a "hospital," "hotel" and "boarding house" in the Ordinance all imply that rooms within a larger dwelling unit are provided to a guest or patient, rather than the rental of the entire dwelling unit. (Ordinance §§ 112.C, 409, R.R. 363a, 372a, 476a.)[3]

The Board and Township (Appellees) argue that, even if the Hoeflings' short-term rental use of the Property was not explicitly covered by any of the enumerated uses, this list was not intended to be exhaustive and instead the exclusion applies to "like" uses "offering overnight accommodations for guests or patients." (Ordinance § 112.C, R.R. 368a.) While we agree with Appellees' argument that the prohibitions are not limited to those specifically named, we do not agree that the exclusion in the Ordinance can be read so broadly to sweep in the Hoeflings' conduct. Under the statutory construction principle of *ejusdem generis* ("of the same kind or class"), "where general words follow an enumeration of … words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to … the same general kind or class

---

[3] The remaining specifically enumerated exclusions in the definition of a dwelling, "rooming house," "institutional house" and "tourist court," are not defined in the Ordinance.

10

as those specifically mentioned." *S.A. by H.O. v. Pittsburgh Public School District*, 160 A.3d 940, 946 (Pa. Cmwlth. 2017) (quoting *Steele v. Statesman Insurance Co.*, 607 A.2d 742, 743 (Pa. 1992)); *see also* 1 Pa. C.S. § 1903(b) ("General words shall be construed to take their meanings and be restricted by preceding particular words."). Therefore, the phrase "offering overnight accommodations for guests or patients" should not be read to include any situation where a property owner rents out the entirety of a dwelling unit to one individual or group, but instead would apply only to similar situations to the enumerated exclusions where a property owner rents out a portion of a dwelling unit to various individuals or groups. *See, e.g., S.A.*, 160 A.3d at 946-49 (concluding that the phrase "any other tool, instrument or implement capable of inflicting serious bodily injury" following a list of examples in the definition of a "weapon" in a school code of conduct was not intended to include a sharpened pencil as a weapon and instead was limited to meaning objects similar and comparable to the examples named in the definition).

Appellees further contend that through the use of the phrase "offering overnight accommodations for guests or patients," the drafters of the Ordinance clearly intended to ban any instance of the rental of a property for a term measured in days or weeks rather than a term measured in months as is typically expressed in a long-term lease of a house or apartment. As the Hoeflings offered the Property for minimum stays of two nights and the average stay was five to seven days, Appellees contend that the Hoeflings were offering the Property for overnight accommodations in contravention of the Ordinance. Initially, we observe that the record demonstrates that the Hoeflings required the renters of the Property to sign a short-term lease agreement that identifies the renters as "tenants," and therefore the renters could not fairly be described as "guests" or "patients." (H.T. at 71, R.R. 131a.) Moreover,

11

while Appellees offer a reasonable limiting principle that would, for example, differentiate a property owner who rents out bedrooms by the month to roommates from a property owner who rents out bedrooms by the night that regularly turn over as lodgers come and go, Appellees' argument does not shed light on the core issue of whether the Ordinance prohibits the rental of an entire dwelling unit as opposed to the rental of a portion of a dwelling unit in the Suburban Residential zone in which the Property sits. Because the Ordinance does not unambiguously forbid the challenged use of a short-term rental of the entire Property, and in light of the dictate that restrictions in zoning ordinances must be read narrowly and that ambiguities must be resolved in favor of the landowner, the Board erred when it denied the Hoeflings' appeal of the enforcement notice.

We find support for our holding in this Court's decisions in *Marchenko* and *Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408 (Pa. Cmwlth. 2017). In *Marchenko*, the owner of a single-family dwelling in a low density residential district offered her entire home for rent on the Home Away website and would stay at a friend's house in New Jersey while the property was rented. 147 A.3d at 948-49; *id.* at 952 (Pellegrini, J., dissenting). The zoning hearing board found that the house was being used for commercial purposes as a "lodge," which was not permitted in the property's low-density residential zoning district. *Id.* at 948-49. In holding that the determination by the zoning hearing board was in error, this Court determined that the primary use of the property was as a single-family residence for the owner, and the ordinance's definition of "single-family residence" as "[a] detached building designed for and occupied exclusively by one family" did not prohibit the type of rental activity on the property. *Id.* at 950. Moreover, we concluded that the property did not satisfy the dictionary definition of

12

a "lodge," which required that its purpose be as a base for outdoor activities. *Id.* at 951.

*Shvekh* involved similar facts except that the property at issue was the petitioner's second home; the petitioner spent approximately one week per month at the second home and otherwise offered out the entire home for rent through VRBO and other websites with minimum stays of two nights. *Id.* at 410-11. The zoning hearing board determined that the property was being used for "short-term, transient rentals" that were typical of a "tourist home," which was not permitted within the zoning district in which the property was located. *Id*. at 411. This Court disagreed, concluding that the "vacation rental of the entire home bears no relation to the bedroom-by-bedroom rental that is the hallmark of the tourist home." *Id*. at 414-15. We explained that VRBO, Airbnb and other similar websites have

> expanded the possible uses of a single-family dwelling, and the Township can address these new uses in the Zoning Ordinance. However, amendments cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of "tourist home."

*Id*. at 415. This Court accordingly determined that the zoning hearing board erred, concluding that, "[a]s in *Marchenko*, there is no provision in the Zoning Ordinance that prohibits the owner of a single-family home from renting it out from time to time to vacationers." *Id*. at 414-15.

Like in *Marchenko* and *Shvekh*, in the instant matter, the Hoeflings rented out an entire single-family home to groups of related persons through websites designed to facilitate short-term rentals. In all three of these cases, the property owners regularly occupied the properties at times when they were not rented, and in *Shvekh* and the present case, the property at issue in the case was the

13

owners' second home. Similarly, in each case the zoning hearing board applied an inapt prohibition to the short-term rental of an entire property – a "lodge" in *Marchenko*, a "tourist home" in *Shvekh* and the prohibition on "lodging houses" and other room-by-room rentals here. Accordingly, we must conclude that, as in *Marchenko* and *Shvekh*, the Board here overstepped its authority, to "advance a new and strained interpretation of its zoning ordinance to effect what it would like the ordinance to say," in effect "shoe-horning" the use of the Property for short-term rentals into an unsuitable existing category of prohibited uses in the Ordinance. *Shvekh* 154 A.3d at 414-15; *see also Reihner v. City of Scranton Zoning Hearing Board*, 176 A.3d 396, 402-03 (Pa. Cmwlth. 2017) (holding that the zoning hearing board deviated from the plain text of the zoning ordinance by applying a prohibition on bed and breakfast uses to a room-by-room rental through the Airbnb website that did not provide breakfast for the guests).

Finally, our Supreme Court's decision in *Albert*, which the Board relied on its decision, is not contrary to our decision here. In *Albert*, a property owner filed an application to operate a halfway house for between 6 and 15 women, which was initially denied by the zoning officer because it was not consistent with the low density residential zoning district in which the property was situated. 854 A.2d at 402. The zoning hearing board reversed and granted the application, concluding that the halfway house qualified as a "single-family detached dwelling," which was defined in the zoning ordinance as "a detached dwelling, designated for or occupied exclusively by one family and containing not more than one dwelling unit." *Id.* at 403-04 (emphasis removed). The determination by the board was affirmed by the court of common pleas and this Court. *Id.* at 403. The Supreme Court concluded that the board's decision was in error, holding that the halfway house was a "purely

transient" use and did not qualify as a single-family detached dwelling because the residents of the proposed facility did not have the required stability and permanency that is inherent in the traditional concept of a family.[4] *Id.* at 409-11. In making its holding, the Court noted that the average stay at the halfway house would be between two to six months and as a result the entire population at the facility could turn over as many as six times per year. *Id*. at 410.

The use of the Property for short-term rentals is entirely different than the halfway house in *Albert*. Unlike the halfway house in *Albert*, the Property was not rented out room-by-room to different unrelated people but instead the Property was occupied at any one time by one group – the Hoeflings or their tenants – who maintained a single housekeeping unit. The halfway house was similar to the lodging house or boarding house uses that are prohibited by the Ordinance in this case. Moreover, the Property was not used in a "purely transient" manner like the halfway house in *Albert* because the Hoeflings visited the Property at least once or twice per month and on holidays. *See Shvekh*, 154 A.3d at 413 (distinguishing *Albert* because the property was visited at least once per month by the owner and her family).

---

[4] "Family" was not defined in the zoning ordinance and therefore the Court looked to prior decisions to understand the minimum relationship that was required of unrelated individuals to be considered a "single housekeeping unit." *Albert*, 854 A.2d at 404-10.

Accordingly, because the Ordinance does not expressly prohibit the short-term rental of the entire Property, the order of the Court of Common Pleas affirming the determination by the Board denying the Hoeflings' appeal from the enforcement notice is reversed.

_____
**JAMES GARDNER COLINS, Senior Judge**

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John P. Hoefling and
Susan E. Hoefling,

      Appellants

      v.

Zoning Hearing Board of
Monroe Township and
Monroe Township

:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1437 C.D. 2017

# **O R D E R**

AND NOW, this 25th day of October, 2018, the order of the Court of Common Pleas of Cumberland County is hereby REVERSED.

_____
**JAMES GARDNER COLINS, Senior Judge**