IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League | : **CASES CONSOLIDATED** |
| | : |
| | : |
| | : |
| | : No. 1004 C.D. 2022 |
| From Decision of City of Philadelphia Zoning Board of Adjustment | : No. 1009 C.D. 2022 |
| | : |
| | : |
| Appeal of: Sandmeyer Steel Company | : |
| | : |
| | |
| In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League | : |
| | : |
| | : |
| | : No. 1005 C.D. 2022 |
| From Decision of City of Philadelphia Zoning Board of Adjustment | : No. 1010 C.D. 2022 |
| | : Argued: April 9, 2024 |
| | : |
| Appeal of: The Greater Bustleton Civic League | : |
| | : |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  June 20, 2024


        In these consolidated appeals, Sandmeyer Steel Company (Sandmeyer)

and The Greater Bustleton Civic League (GBCL) (together, Appellants or Objectors)

appeal the order of the Philadelphia County Court of Common Pleas (trial court)

denying Objectors' appeals of the decisions of the City of Philadelphia (City) Zoning Board of Adjustment (ZBA) that affirmed the issuance of "by right" zoning permits by the City's Department of Licenses and Inspections (L&I) to Relteva LLC (Relteva or Owner), the owner, and United Parcel Service (UPS), the lessee, for the 130-acre land parcel at 1 Red Lion Road and the contiguous 1-acre parcel at 10098 Sandmeyer Lane (together, Property), located in the City's I-2, Medium Industrial Zoning District.[1]  We affirm.

---

[1] Section 14-403(1)(c)(.4) of the City's Code provides:

> The I-2, Medium Industrial [D]istrict is primarily intended to accommodate light industrial uses, moderate-impact uses, and employment activities such as manufacturing, distribution, processing, industrial parks, and other activities that may generate noise, odor, vibration, after hours activities, or traffic impacts well beyond the subject property lines.

City of Philadelphia, Pa. Code (Phila. Code or Code) §14-403(1)(c)(.4) (2020).  In turn, Section 14-601(10)(i) of the Code permits "Trucking and Transportation Terminals" as a subcategory of the permitted Industrial Uses Category, defined as: "Uses engaged in the dispatching and long-term or short-term storage of large vehicles.  Minor repair and maintenance of vehicles stored on the premises is also included." *Id.* §14-601(10)(i).  Finally, Section 14-601(9)(b), (c), and (d) of the Code outlines the permitted uses of the Wholesale, Distribution, and Storage Use Category, stating:

> This category includes uses that provide and distribute goods in large quantities, principally to retail sales, commercial services, or industrial establishments.  Long-term and short-term storage of supplies, equipment, commercial goods, recyclable materials, and personal items is included.  The wholesale, distribution, storage subcategories are:
>
> * * *
>
> (b) Moving and Storage Facilities.

**(Footnote continued on next page…)**

2

Relteva entered into an agreement with UPS for the lease of the Property for use as a warehouse, distribution, and trucking facility with accessory uses. On December 23, 2020, L&I issued Relteva by right Zoning Permit No. ZP-2020-010545 (Development Permit) for the Red Lion parcel allowing:

> [T]he complete demolition of all existing structures on [the] lot; for the erection of [a] one (1) story/partial two (2) story detached structure and for the erection of accessory structures [of the] size and location as shown in the application.

---

Uses engaged in the moving of household or office furniture, appliances, and equipment from one location to another, including the temporary storage of those same items. Typical uses include moving companies and self-service and mini-storage warehouses.

(c) Warehouse.

Uses that do not meet the definition of a moving and storage facility but that are engaged in long- term and short-term storage of goods, typically in containers such as boxes, barrels, or drums, within a completely enclosed building.

(d) Wholesale Sales and Distribution.

Uses engaged in the wholesale sales, bulk storage, and distribution of goods. Such uses may also include incidental retail sales. Wholesale showrooms are also included in this use subcategory.

*Id.* §14-601(9)(b), (c), and (d). Pursuant to Table 14-602-3 of the Code, both the Trucking and Transportation subcategory of the Industrial Use Category, and all of the subcategories of the Wholesale, Distribution, and Storage Use Category, are permitted uses of the Property.

However, under Section 14-514(1) of Code, the Property is also located in the FNE, Far Northeast Overlay District of the City. Phila. Code §14-514(1). Pursuant to Section 14-514(2)(a), "[c]ommercial vehicle repair and maintenance, commercial vehicle sales and rentals, vehicle fueling station, personal vehicle repair and maintenance, personal vehicle sales and rentals, and vehicle paint finishing shop uses are prohibited within all lots zoned I-1 or I-2" within the FNE. *Id.* §14-514(2)(a).

3

Reproduced Record (RR) at 1639a.

The Development Permit identified the approved uses for the Red Lion parcel as "Trucking and Transportation Terminals, Wholesale, Distribution, and Storage -- Warehouse," and identified the following "Additional Use Details":

> For a warehouse, distribution, and trucking and transportation terminal with accessory offices and vehicle services and maintenance with accessory structures for employee access, maintenance and accessory vehicle fueling (providing gasoline, diesel, [compressed natural gas (CNG)] dispenser and CNG station) and wash station with 1,827 accessory parking spaces, (956 employee spaces, 737 trailer spaces, and 134 tractor spaces), 101 bicycle spaces, and more than 25 loading spaces.

RR at 1640a.[2]

On December 30, 2020, L&I issued Zoning Permit No. ZP-2020-000653 (Unity of Use Permit), recognizing a "unity of use" under which the Red Lion parcel and the Sandmeyer parcel would be treated as a single zoning lot.[3] The permit described the "Approved Development" as:

---

[2] On January 13, 2021, L&I amended the Development Permit to add a note to the "Additional Use Details," stating: "[A]mended permit language as of 1/13/2021 per [the City Planning Commission's (Commission)] Civic Design Review [(CDR)] Committee accessory retail sales and office use are proposed in the accessory structure and additional landscaping has been proposed." RR at 1640a.

[3] Section 14-203(169) of the Code defines "Lot" as: "A parcel of land consisting of a horizontal plane bounded by vertical planes that comprise its front, side, and rear lot lines, and that is intended or designed to be used, developed, or built upon as a unit." Phila. Code §14-203(169). In turn, Section 14-203(170) defines "Lot Adjustment" as: "A subdivision that results in the creation of new lots that all have street frontage on an existing legally open street shown on the City Plan; or the relocation of existing lot lines, including the combination of existing lots into fewer or differently configured lots." Phila. Code §14-203(170).

In addition, Section 14-203(328) of the Code defines "Subdivision" as:

**(Footnote continued on next page…)**

4

A division of any part, lot, or area of land by the owner or his or her agent into two or more lots, or changes in existing lot lines, for the purpose of conveyance, transfer, improvement, or sale with or without appurtenant roads, streets, lanes, driveways, and ways dedicated or intended to be dedicated to public use, or the use of purchasers or owners of lots fronting on them. The term subdivision includes re-subdivision and, as appropriate, shall refer to the process of subdividing land or to the land so subdivided.

Phila. Code §14-203(328). Moreover, Section 14-304(6)(b) and (c) provides:

(b) Procedure.

(.1) L&I shall not issue any zoning permits for a lot adjustment unless the lot adjustment, as shown on a plot plan, has been first reviewed and approved by the Commission.

(.2) No activity described in [Section] 14-304(6)(a) above shall occur, and no street, driveway, sanitary sewer, stormwater sewer, water main, public service, or other facilities in connection with the lot adjustment shall be constructed, maintained, opened, or dedicated for public use or for the common use of occupants of buildings abutting on them, and no record of lot shall be created, until a plot plan has been approved and compliance with the procedures of this [Section] 14-304(6) has been established.

(.3) The procedure for review and decision on a lot adjustment is:

(.a) The Commission shall review and approve, approve with conditions, or deny the plot plan using the criteria in [Section] 14-304(6)(c) below. The Commission shall review and approve, approve with conditions, or deny the plot plan within 45 days of application

**(Footnote continued on next page…)**

For the establishment of a unity of use to create one (1) lot for zoning purposes with restrictive covenants and agreements to be recorded by deed to bind current and future owners of the contiguous two (2) parcels (1 Red Lion Road [] and 10098 Sandmeyer Lane) to preserve the unity of use and the legality of the entire project that stems from the single zoning lot treatment prior to the issuance of [a] certificate of occupancy, [and] proof of [the] recordation of easements, agreements, and restrictive covenants must be supplied.

submission or the plot plan shall be deemed approved.

(.b) If it disapproves the plot plan, the Commission shall notify the applicant in writing of its action and the reasons for the decision within seven days after the decision.

(.c) The applicant must record deeds and the approved survey plan with the Department of Records. The deed or deeds must include the legal description of, and the proposed street address and tax account number assigned by the Office of Property Assessment for, each lot on the approved survey plan.

(c) Criteria for approval.

The Commission shall approve a lot adjustment if it finds that:

(.1) It is not a subdivision subject to [Section] 14-304(7) (Subdivisions and Subdivision Plats); and

(.2) It complies with the lot dimension and street frontage requirements of this [Code].

*Id.* §14-304(6)(b) and (c). Finally, Section 14-304(7)(a) provides: "The procedures of this subsection apply to any subdivision (as defined in [Section] 14-203(328) (Subdivision)), *except for a lot adjustment*." *Id.* §14-304(7)(a) (emphasis added).

6

RR at 1643a.

On January 21, 2021, Sandmeyer Steel and GBCL filed third-party appeals of L&I's grant of the zoning permits with the ZBA. In its appeal, Sandmeyer claimed: (1) the proposed use improperly effectuates a subdivision; (2) the proposed use of the Sandmeyer Lane parcel as an accessory driveway use to the Red Lion parcel violates Section 14-604(1)(e) of the Code,[4] which requires an accessory use to be located on the same lot as the principal use and structure; (3) the proposed vehicle maintenance and fueling uses on the Red Lion parcel are prohibited in the FNE Overlay District by Section 14-514(2)(a) of the Code; (4) the proposed accessory driveway use of the Sandmeyer Lane parcel exceeds that use's limitations; and (5) the proposed use of the Red Lion parcel is not properly classified as an I-2 use under the Code.

In its appeal, GBCL claimed: (1) the plans submitted by Relteva upon which L&I based the zoning permits were "defective, [and] misleading, [and] misinterpret, and mischaracterize, [and] do not provide full or accurate information and provide false information,"[5] and the zoning permits "must be revoked as having been issued in error"; (2) the challenged permit "was not properly processed or issued by [L&I]";[6] (3) the permit was not posted as required by Section 14-

---

[4] Phila. Code §14-604(1)(e). Section 14-604(1)(e) states: "Accessory uses and structures must be located on the same lot as the principal use and structure, except as otherwise expressly stated."

[5] As noted by the ZBA in its decision, "[t]the allegedly defective, misleading, and inaccurate information was not identified" by GBCL. RR at 11a.

[6] As noted by the ZBA in its decision: "Again, GBCL did not state the grounds for its broad allegation or identify how, specifically, L&I erred in processing the permit." RR at 11a.

303(6)(f)(.3) of the Code;[7] (4) the proposed principal uses are not "Limited Industrial" or "General Industrial" uses as categorized[8] and defined in Section 14-601(10)(b) and (c) of the Code,[9] but are "Intensive Industrial" uses as defined in

---

[7] Phila. Code §14-303(6)(f)(.3). Section 14-303(6)(f)(.3) states:
(.3) Posting of As of Right Permits by L&I.

No later than 5:00 p.m. of the next business day following the date of issuance of any as of right zoning permit, L&I shall:

(.a) post the zoning permit on its official website, in searchable format, by date of issuance, name of permit holder, address of permitted property, zip code, and council district; and

(.b) Send by email to all Registered Community Organizations [(RCOs)] and all councilmembers a notification of the zoning permit that includes the date of issuance, the name of the permit holder, and the address, zip code, and council district of the permitted property.

[8] Section 14-602(2)(a) of the Code states:

For the purpose of this [Code], uses are classified into use categories and subcategories. These are described and defined in [Section 14-601 of the Code, Phila. Code] §14-601 (Use Categories). Use categories and subcategories are identified in the first column of the use tables. *In some cases, specific use types are listed in addition to the use subcategories*.

Phila. Code §14-602(2)(a) (emphasis added). Thus, the uses listed in the Code are not necessarily the exclusive list of the permitted uses in a zoning district.

[9] Phila. Code §14-601(10)(b) and (c). Section 14-601(10)(b) of the Code describes "Limited Industrial" uses as:

Uses that process, fabricate, assemble, treat, or package finished parts or products without the use of explosive or petroleum materials. This subcategory does not include the assembly of large

**(Footnote continued on next page…)**

8

Section 14-601(10)(d) of the Code;[10] (5) whether characterized as principal or accessory, the proposed retail sales, commercial vehicle repair, and vehicle fueling uses are prohibited in the FNE Overlay District under Section 14-514(2)(a) of the Code; (6) the proposed accessory structures violate the requirements of Section 14-303 of the Code; and (7) Relteva failed to comply with the notice requirements of

_____

> equipment and machinery and has very limited external impacts in terms of noise, vibration, odor, hours of operation, and traffic.

Phila. Code §14-601(10)(b).  In turn, Section 14-601(10)(c) describes "General Industrial" uses as:

> Uses that process, fabricate, assemble, or treat materials for the production of large equipment and machines *as well as industrial uses that because of their scale or method of operation regularly produce* odors, dust, *noise, vibration, truck traffic or other external impacts that are detectable beyond the property lines* of the subject property.

Phila. Code §14-601(10)(c) (emphasis added).  Contrary to GBCL's assertion, the proposed uses on the Property clearly fall within the foregoing description of "General Industrial" uses.

[10] Phila. Code §14-601(10)(d).  Section 14-601(10)(d) describes "Intensive Industrial" uses as:

> Industrial uses that regularly use hazardous chemicals or procedures or produce hazardous byproducts, including the following: manufacturing of acetylene, cement, lime, gypsum or plaster-of-paris, chlorine, corrosive acid or fertilizer, insecticides, disinfectants, poisons, explosives, paint, lacquer, varnish, petroleum products, coal products, plastic and synthetic resins, and radioactive materials.  This subcategory also includes petrochemical tank farms, gasification plants, smelting, animal slaughtering, oil refining, asphalt and concrete plants, and tanneries.  Intensive industrial uses have high potential for external impacts on the surrounding area in terms of noise, vibration, odor, hours of operation, and traffic.

Contrary to GBCL's assertion, the proposed uses on the Property clearly *do not* fall within the foregoing description of "Intensive Industrial" uses.

the Code during the Commission's CDR Committee review process thereby violating GBCL's due process rights.

On April 23, 2021, GBCL's attorney asked the ZBA to issue subpoenas compelling the appearance of: (1) Cheli Dahal, the L&I Plans Examiner who reviewed the applications for the challenged permits; (2) Richard Maggetti, the L&I supervisor of Dahal and other examiners involved in the review of the applications; (3) the City's Deputy Commissioner of Transportation Richard Martinez; (4) FNE Overlay District Planner Greg Washington; and (5) the Commission's Executive Director Eleanor Sharpe. On April 25, 2021, Leonard Reuter, Senior Attorney in the City's Law Department, e-mailed the ZBA's attorney and administrator, noting that GBCL had not yet submitted exhibits for the upcoming hearing and objecting to the requested subpoenas because "there is no relevance to their testimony and the proposed scope is onerous," and "[t]he [C]ode interpretations that are contested in this matter are self-evident on the face of the permit plans and the permits that were issued." RR at 12a.

Ultimately, on April 27, 2021, at the first hearing on Relteva's application, the ZBA asked counsel for the parties to summarize their respective positions. In relevant part, Relteva's attorney stated that Relteva is an affiliate of CVC Commercial Development Corporation, and that UPS is the tenant. RR at 89a. He stated that the history of the Property "has long been affiliated with industrial use[s]," "[a]nd it was the famous Budd Plant where they manufactured and serviced rail cars." *Id.* at 90a. He also stated that a prior owner, Teva Pharmaceuticals, had "received similar permits by L&I for [a] transportation, warehouse, [and] distribution center," but, "[u]nfortunately, it never started construction on the building." *Id.*

10

The ZBA then directed the City's Senior Attorney to call Dahal, the L&I examiner who reviewed the application. Dahal testified that she worked for L&I as a Civil Engineer 2 for 13 years, and that she was the plans examiner for the project at issue. RR at 97a-98a, 102a-03a. She stated that the application, the revised application, and the supporting materials were submitted to the City through Eclipse, the City's electronic filing system. *Id.* at 109a. She testified that she determined that the proposed warehouse, distribution, and trucking terminal principal uses were permitted by right on the Property, and that the proposed vehicle repair, maintenance, and fueling accessory uses were also permitted because they were "[n]ot for the public." *Id.* at 106a-07a. She said that the plans were also Code compliant on all dimensional requirements such as setbacks. When GBCL's attorney sought to cross-examine Dahal regarding any documents submitted or details provided by Relteva during the application process, the City's Senior Attorney objected, stating that "[t]his entire line of questioning is utterly irrelevant" because Objectors took appeals from the Zoning Permits and "are claiming that the uses are not permitted" on the Property. *Id.* at 155a. He asserted: "It is a legal argument. The permit says what it says. What [Dahal] looked at at this point is essentially irrelevant." *Id.* at 155a-56a. Due to time constraints, the hearing was ended before Dahal's testimony was concluded and a second hearing was scheduled.

Based on the arguments made at the hearing, on May 17, 2021, the ZBA's counsel sent the parties a request for: (1) clarification from GBCL regarding the specific grounds upon which its appeal was based; (2) a list of all witnesses that they propose to present with an offer of proof as to the issues that each witness was expected to address and the relevance of their testimony; and (3) legal memoranda addressing the identified issues in the appeals.

11

On June 7, 2021, GBCL's counsel identified 11 fact witnesses that GBCL proposed to present, including a traffic engineer; an architect and urban planner; an expert in the area of "economic development and economic impact;" the President of GBCL and 5 members of GBCL; the President of the Somerton Civic Association; Dahal; and Greg Waldman of the Commission. Sandmeyer Steel's counsel identified two executives with the company who would present testimony. In a June 11, 2021 correspondence, GBCL objected to being required to submit clarifications as "overly and unduly burdensome," and that it "created an unlevel playing field" by "tipping [its] hand" by providing the opposition "with a copy of [its] playbook."

On September 14, 2021, Relteva's counsel submitted a Motion to Exclude Irrelevant and/or Duplicative Evidence in which he challenged Objectors' standing and argued, *inter alia*, that Objectors' offers of proof were irrelevant to whether the plans that were submitted to L&I followed the proper procedure for the issuance of the Development Permit and the Unity of Use Permit. Both GBCL and Sandmeyer Steel submitted responses in opposition to the motion.

At the start of the ZBA's second hearing, on October 12, 2021, its Chair stated that the ZBA had reviewed the submitted materials and made the following rulings: (1) Objectors' request for subpoenas was denied; (2) the hearing would continue with GBCL's cross-examination of Dahal; (3) following Dahal's testimony, the ZBA would hear testimony from the L&I supervisor, whose testimony would be limited to confirming whether L&I properly issued the permits; (4) the ZBA would then hear limited testimony necessary to establish Objectors' standing; and (5) thereafter no more testimony would be permitted. RR at 212a-14a. GBCL's counsel then resumed his cross-examination of Dahal regarding the

application process and the information submitted by Relteva. Dahal was then cross-examined by Sandmeyer Steel's counsel, followed by questioning by the City's Senior Attorney and Relteva's counsel. Jais Skaria, an engineering service supervisor with L&I was then called to testify. When questioned by the Senior Attorney, Skaria confirmed that he had reviewed the application and he believed that the permits for the Property were properly issued. *See* RR at 338a-39a. Skaria was then subject to cross-examination by Objectors' counsel, and the parties presented closing arguments.[11]

The following day, the ZBA unanimously voted to deny Objectors' appeals. In its Findings of Fact and Conclusions of Law filed in support of that decision, the ZBA made the following relevant conclusions of law.

With respect to the principal uses of the Property, the ZBA noted that the Development Permit identifies the approved principal use of the Property as "Trucking and Transportation Terminals; Wholesale Distribution, and Storage -- Warehouse." It noted that the Property is in the I-2 Industrial Zoning District within the FNE Overlay and that "Trucking and Transportation Terminals" is a subcategory of the Code's Industrial Use Category, defined in Section 14-601(10)(i) as "engaged in the dispatching and long-term or short-term storage of large vehicles," and that "[m]inor repair and maintenance of vehicles stored on the premises is also included." Warehouse use is a subcategory of the "Wholesale, Distribution, and Storage Use"

---

[11] GBCL's counsel reasserted his objection to the ZBA's preclusion of his witnesses' testimony submitted as offers of proof. He also argued that the Development Permit is "clearly defective on its face," and that the plans and information submitted by Relteva were incorrect, and that L&I should not have allowed the permit to be amended without submitting a new application and going through the entire review process again. *See* RR at 395a-402a. Sandmeyer Steel's counsel spoke of the impact that the UPS facility would have on the surrounding properties in terms of the traffic, and the particular problems created by the accessory driveway on the Sandmeyer parcel. *See id.* at 402a-16a.

Category that is specifically permitted in the I-2 Zoning District. Section 14-601(9) of the Code permits "uses that provide and distribute goods in large quantities" and includes "[l]ong term and short term storage of supplies, equipment, [and] commercial goods…." In addition, "Warehouse" is one of the four subcategories of "Wholesale, Distribution, and Storage Use" Category in Section 14-601(9)(c) as "[u]ses that do not meet the definition of a moving and storage facility but that are engaged in long-term and short-term storage of goods…." The ZBA explained that Objectors "maintain that the proposed uses by virtue of their intensity and the likely impact of their operations [] are incompatible with the I-2 Industrial district [] and must instead be classified as I-3 Heavy Industrial uses, uses that would require a variance." RR at 21a. However, ultimately, the ZBA concluded:

> 27. The plain language of the [Code] identifies the approved principal uses of the Propert[y] as permitted uses in the applicable I-2 Industrial Zoning classification. City Council was presumably aware of the district's general description when it designated the uses as permitted. Therefore, as in the cases discussed above, the [Code's] allowance of the proposed uses by right establishes, as a matter of law, legislative acceptance that the uses are consistent with the I-2 zoning classification.

> 28. As noted above, a permitted use is a use "which is allowed absolutely and unconditionally." *Aldridge v Jackson Township*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009). Significantly, the Legislature could have made approval of these uses dependent on the details and intensity of the individual proposals by designating them as conditionally permitted uses requiring a special exception. City Council, however, permitted the uses by right and the [ZBA], by law, "lacks the authority to modify or amend the terms of [the Code]." *Sabatini v. Zoning Hearing Board*, [230 A. 3d 514, 520 (Pa. Cmwlth. 2020)]. *Also see Reihner v. City of Scranton Zoning Hearing Board*, 176 A.3d 396, 400 (Pa. Cmwlth. 2017) ("it is an

14

> abuse of discretion for a zoning hearing board to narrow the terms of an ordinance and further restrict the use of a property").

RR at 22a. Accordingly, "[b]ased on the plain language of the Code, and applying the relevant rules of statutory construction," the ZBA "conclude[d] L&I properly determined the approved principal uses are permitted by right." *Id.* at 23a.

In addition, the ZBA noted that the Development Permit also lists a number of accessory uses, including "accessory offices, vehicle services and accessory vehicle fueling and wash stations," and, "per [the Commission's CDR] Committee, accessory retail sales and office use are proposed in the accessory structure." RR at 23a. Objectors maintain that because the accessory vehicle maintenance, repair, wash, and fueling uses are prohibited as principal uses by the Code in the FNE Overlay District under Section 14-514(2), they are likewise prohibited by Section 14-604(1)(b), which provides that "***unless otherwise expressly stated***, accessory uses and structures are subject to the same regulations that apply to principal uses and structures." *Id.* at 23a-24a (emphasis added). The ZBA noted that even accepting a broad reading, Section 14-601(8)(g)(c) defines "vehicle fueling station" as one that sells fuel at retail, and the fueling station on the Property would only service UPS vehicles as accessory to the permitted uses. In addition, Section 14-601(10)(i) defines "Trucking and Transportation Terminals" as including the "minor repair and maintenance of vehicles stored on the premises…." *Id.* at 24a. Moreover, although Dahal's testimony regarding the accessory retail sales was unclear, "if [L&I's] intent was to include incidental retail sales as an approved accessory or incidental use, the use meets the Code criteria [in Sections 14-203(2) and 14-604(1)] for accessory uses and would be permitted." *Id.*

Moreover, Sandmeyer Steel challenged the Unity of Use Permit on the basis that it "improperly effectuates a subdivision without Commission approval and

15

without complying with the subdivision procedures in Section 14-304(7) of the Code. However, Section 14-203(328) defines "Subdivision" as "a division of any . . . lot or area of land by the owner or his or her agent into two or more lots or changes in existing lot lines." Relteva's Unity of Use Permit allows the two separate parcels to be treated as one lot as "Lot" is defined in Section 14-203(169) of the Code. Relying on Opinion No. 91-4 issued on January 26, 1991, by the Assistant City Solicitor to L&I's Chief of Permit Issuance, *see* RR at 947a-49a, the ZBA determined that the application met all requirements for a unity of use. Opinion No. 91-4 relies, in turn, on the Supreme Court opinions in *Markey v. Zoning Board of Adjustment*, 187 A.2d 175 (Pa. 1963), and *Appeal of Fisher*, 49 A.2d 626 (Pa. 1946), approving of this interpretation of "Lot" under the Code. As a result, Relteva "was not required to formally consolidate the Propert[y], which remain[s] under separate deeds, as a condition of approval." RR at 25a.

Next, Sandmeyer Steel argued that L&I erred in allowing the accessory driveway use for the Sandmeyer parcel because (1) Section 14-604 requires accessory uses and structures to be located on the same "lot" as the principal use and structure; and (2) the proposed use "exceeds the use limitations" of the Sandmeyer parcel because there is an incredible disparity between the allowed uses of the [Sandmeyer parcel] and the uses served by the driveway." RR at 25a. First, *Markey*, *Appeal of Fisher*, and Opinion No. 91-4 support the determination that the two separate parcels in common ownership by Relteva are considered one "Lot", so the driveway is located on the same zoning lot as the principal uses, as required by Section 14-604. Second, the case law cited by Sandmeyer Steel is inapposite because both parcels are herein zoned I-2 Industrial, while the lots involved therein

16

were zoned for different types of uses. Thus, the "disparity" present in those cases is not present herein.

With respect to Objectors' standing, the ZBA determined that "[t]here being no dispute that the Sandmeyer Steel's properties are located in the immediate area and that a number of individual members of GBCL live in close proximity to the Proper[y], that both [Objectors] had standing to appeal." RR at 27a.[12]

Finally, the ZBA "conclude[d] that the proposed testimony from expert witnesses and others intended to show the potential harmful effects of the proposed uses was properly excluded as not relevant." RR at 28a. Specifically, the ZBA "was asked to decide if the proposed uses were, as L&I concluded, permitted by right" in the I-2 Zoning District, and the proposed evidence was irrelevant because "[e]vidence offered to establish that the uses' impact would exceed that expected in an I-2 [Zoning] District . . . would not have made any 'fact at issue more or less probable'" so it "was not relevant and was properly excluded." *Id.*

Nevertheless, Objectors contend that Section 14-303(14)(e) of the Code[13] required the ZBA to permit any testimony from any witness called by a party. However, the ZBA determined that Section 14-303(14(e) "indicates only that a

---

[12] The ZBA's decision regarding Objectors' standing in this case must be contrasted with the disposition of the standing issue in *Appeal of: The Greater Bustleton Civic League* (Pa. Cmwlth., No. 629 C.D. 2023, filed June 4, 2024), argued seriately with the above-captioned consolidated appeals. In that case, GBCL appealed a trial court order quashing its appeal of L&I's grant of a building permit for the same UPS project on the Property.

[13] Phila. Code §14-303(14)(e). Section 14-303(14)(e) states:

> Any organization or member of the public who attends a public hearing before the [ZBA] shall be permitted to offer testimony individually regardless of whether the organization, individual or person on whose behalf they are offering testimony has standing to appeal the decision by the [ZBA] to the [trial court].

17

witness may not be prohibited from testifying based on standing," and that "[i]t does not suggest that the [ZBA] cannot limit testimony to that which is relevant." RR at 28a. As a result, the ZBA "has 'wide latitude in determining what evidence to admit as relevant,'" and "that its evidentiary rulings were proper and within its authority to make." *Id.*

Furthermore:

> 73. Finally, addressing GBCL's attorney's suggestion that the [ZBA]'s requests for clarifications and offers of proof, "unfairly, unjustly, and improperly prejudice[d]" his client by requiring it to give the City and [Relteva] "what amounts to advance notice of a significant portion of [GBCL's] case," [the ZBA] note[d] that as the party with the burden of proof, and given the presumption that L&I acted properly,[14] giving other parties advance notice of its arguments and grounds for appeal is exactly what GBCL was obligated to do.

> 74. With regard to GBCL's suggestion that the [ZBA's] requests were "highly unusual" and "unduly burdensome," the [ZBA] note[d] that its requests were made as a means of narrowing the appeals to consideration of issues and evidence that was relevant. This in turn was due, in no small part, to the nature of GBCL's submissions, which included an appeal that failed to identify the specific errors L&I allegedly made, the submission of thousands of pages of exhibits days before

---

[14] *See, e.g.*, *In re Appeal of Smith*, 231 A.3d 59, 67 (Pa. Cmwlth. 2020) ("[W]e note that government actors are presumed to act legally. *See Office of Governor v. Donahue*, 59 A.3d 1165, 1170 (Pa. Cmwlth. 2013) (stating, '[n]o rule of law requires this Court to presume that an agency will act in bad faith in complying with its statutory duties'), *aff'd*, [98 A.3d 1223 (Pa. 2014)]; *Hughes v. Chaplin*, [132 A.2d 200, 202 (Pa. 1957)] (stating presumption of regularity of acts of public officers exists until the contrary appears)."); *U.S. National Bank Association v. United Hands Community Land Trust*, 129 A.3d 627, 636 (Pa. Cmwlth. 2015) ("'It is, as a general rule, presumed that a public official properly and regularly discharges his duties, or performs acts required by the law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require.'") (citation omitted)).

18

the initial hearing, and a request for subpoenas for witnesses whose testimony seemed unlikely to yield information relevant to the issues presented.

RR at 28a-29a. Accordingly, "[f]or all of the above-stated reasons, the [ZBA] conclude[d] [Objectors'] appeals were property denied." *Id.* at 29a.

On November 11, 2021, Objectors filed timely appeals of the ZBA's decision to the trial court, which were consolidated for disposition by that court on March 4, 2022. Following legal argument, but without taking additional evidence, the trial court issued an order denying Objectors' consolidated appeals.[15] Objectors then filed the instant timely consolidated appeals to this Court.[16]

On appeal, Sandmeyer claims: (1) the ZBA erred in granting the application to operate an accessory commercial vehicle maintenance use on the Property because Section 14-514(2)(a) of the Code prohibits such a use in the FNE, Far Northeast Overlay District; (2) the ZBA erred in approving the permits allowing Relteva to use the Sandmeyer Lane parcel as an accessory driveway for the Red Lion Road parcel; (3) the ZBA erred in approving the permits thereby subdividing the Property by eliminating the lot lines without approval by the Commission as required by Section 14-304 of the Code; and (4) the ZBA abused its discretion by

---

[15] On July 19, 2022, the trial court entered an order and memorandum opinion denying Objectors' consolidated appeals. On July 22, 2022, Relteva filed a motion to correct the order, seeking the redaction of a paragraph on page 7 of the trial court's memorandum opinion. On August 2, 2022, Sandmeyer Steel filed a motion for reconsideration, asking the trial court to vacate its order in its entirety and to reopen the issues raised therein. On August 9, 2022, Relteva filed an answer to the motion for reconsideration. On August 17, 2022, the trial court vacated its July 19, 2022 order in the consolidated appeals. On August 18, 2022, the trial court entered the instant order and memorandum opinion denying Objectors' consolidated appeals.

[16] Where, as here, the parties presented no additional evidence in the trial court following the ZBA's decision, "our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law." *Society Hill Civic Association v. Philadelphia Zoning Board of Adjustment*, 42 A.3d 1178, 1185 n.2 (Pa. Cmwlth. 2012).

refusing to allow Sandmeyer Steel to present any witnesses and exhibits demonstrating the impropriety of the permits.

On appeal, GBCL claims: (1) the ZBA committed an error of law, abuse of discretion, and/or a capricious disregard of evidence by failing to allow GBCL to present evidence regarding the true intensity of the proposed use in violation of the Local Agency Law,[17] the Code, case law, and basic precepts of due process: (2) the ZBA erred by deferring to L&I's expertise in issuing the Zoning Permits; (3) the ZBA erred in determining that the Zoning Permits should not be revoked even though they violate the Code and an L&I employee admitted that they were issued in error; and (4) the trial court erred in determining that Relteva's self-identification of the use on the application does not constitute illegal flexible selective zoning.[18]

---

[17] 2 Pa. C.S. §§751-754.

[18] The Dissenting Opinion's rationale to reverse the trial court's order and remand the matter to the ZBA for further hearing is unavailing. Through the proposed expert testimony, Objectors sought to have the ZBA recognize a new "High-Cube Parcel Hub" intensive industrial use, a use that is not contained or defined in the Code; to have the ZBA designate Relteva's proposed uses as constituting this "High-Cube Parcel Hub" use; and to then also have the ZBA determine that L&I erred because this proposed "High-Cube Parcel Hub" use is not a permitted use in the I-2, Medium Industrial Zoning District. However, it is inappropriate for Objectors to seek an amendment to the Code in the instant proceedings before the ZBA on their objections to the issuance of "by right" zoning permits by L&I to Relteva under the Code as it is currently written.

Indeed, as this Court has previously explained in a similar circumstance:

> The second part of the [b]oard's decision concerned the impact of the proposed use on the public welfare and safety. The inquiry of the [b]oard in this area was misplaced. All the [b]oard had before it was the question of whether a pizza shop and gameroom were *permitted* uses under the ordinance.

**(Footnote continued on next page…)**

20

However, after reviewing the record, Objectors' briefs and oral argument, and the relevant case law, we conclude that the appellate issues have been ably resolved in the thorough and well-reasoned opinion of Judge Anne Marie B. Coyle. Accordingly, we affirm the trial court's order on the basis of her opinion in the matter of *In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League* (C.P. Phila., November Term 2021 Nos. 00973, 00974, and 01073, filed August 18, 2022).

_____
MICHAEL H. WOJCIK, Judge

_____

A permitted use, in technical zoning jargon refers to uses allowed absolutely and unconditionally. *Kopelman v. The Zoning Hearing Board of New Kensington*, [423 A.2d 761 (Pa. Cmwlth. 1980)]. Once compliance with the requirements of the [o]rdinance is established, no further inquiry is authorized. The uses permitted by the [o]rdinance were determined not to be detrimental to the public health, safety, or welfare by the [c]ity when it passed the [o]rdinance.

*Laird v. City of McKeesport*, 489 A.2d 942, 944 (Pa. Cmwlth. 1985) (emphasis in original).

Likewise, in the instant proceedings on the issuance of the "by right" permits, it would have been inappropriate for the ZBA to consider Objectors' testimony and evidence regarding the recognition of this new "High-Cube Parcel Hub" use and its classification as an intensive industrial use that is not permitted in the I-2, Medium Industrial Zoning District. *Laird*; *see also* Phila. Code §14-103(4)(a)(.1) ("[ZBA] may, after public notice and public hearing[,] . . . [h]ear and decide appeals in zoning matters where error is alleged in any order, requirement, decision, or determination made by an administrative official in the enforcement of this [Code] . . . ."); *id.* §14-303(1)(a) ("Any person or entity . . . may request that the **City Council** enact an amendment of the text of this [Code] or the official zoning map, pursuant to §14-304(3) (Zoning Map and Text Amendments).") (emphasis added); *id.* §14-304(3)(a) ("The zoning map and text amendment procedures of this subsection apply to **ordinances for amendments to the text of this [Code] and to amendments to the official zoning map**.") (emphasis added).

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League | : | |
| | : | |
| | : | |
| | : | No. 1004 C.D. 2022 |
| From Decision of City of Philadelphia Zoning Board of Adjustment | : | No. 1009 C.D. 2022 |
| | : | |
| | : | |
| Appeal of: Sandmeyer Steel Company | : | |
| | : | |
| | : | |
| In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League | : | |
| | : | |
| | : | |
| | : | No. 1005 C.D. 2022 |
| From Decision of City of Philadelphia Zoning Board of Adjustment | : | No.  1010 C.D. 2022 |
| | : | |
| | : | |
| Appeal of: The Greater Bustleton Civic League | : | |
| | : | |

# **O R D E R**

AND NOW, this 20<u>th</u> day of <u>June</u>, 2024, the order of the Philadelphia County Court of Common Pleas dated August 18, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League | : **CASES CONSOLIDATED**<br>:<br>:<br>: |
| From Decision of City of Philadelphia Zoning Board of Adjustment | : No. 1004 C.D. 2022<br>: No. 1009 C.D. 2022<br>: |
| Appeal of: Sandmeyer Steel Company | : |
| | |
| In re: Appeals of Sandmeyer Steel Company and The Greater Bustleton Civic League | :<br>:<br>:<br>: |
| From Decision of City of Philadelphia Zoning Board of Adjustment | : No. 1005 C.D. 2022<br>: No. 1010 C.D. 2022<br>: Argued: April 9, 2024 |
| Appeal of: The Greater Bustleton Civic League | :<br>: |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WALLACE                              FILED:  June 20, 2024


Respectfully, I disagree with the Majority's conclusion that the City of Philadelphia (City) Zoning Board of Adjustment (ZBA) had authority to prevent Sandmeyer Steel Company (Sandmeyer) and the Greater Bustleton Civic League

(GBCL) (together, Objectors) from presenting witness testimony and introducing evidence at the ZBA's public hearing in this matter. *See In re: Appeals of Sandmeyer Steel Co. and the Greater Bustleton Civic League*, (Pa. Cmwlth., Nos. 1004, 1005, 1009, and 1010 C.D. 2022, filed June 20, 2024), slip op. at 17-20 (Majority Opinion). Because I believe the ZBA must allow the parties and members of the public who attend the ZBA's public hearings to testify and present evidence, I would vacate the Philadelphia County Court of Common Pleas' (trial court) order and remand this matter to the trial court with instructions to vacate the ZBA's decision and further remand this matter to the ZBA to properly conduct a public hearing as required by the City's Zoning Code (Code).[1]

Relevant to the ZBA's refusal to permit Objectors to present testimony or evidence, Sandmeyer asserted in its appeal to the ZBA that "the classification of the proposed use as an 'I-2' use is not proper. Given the high-impact and intensive nature of the proposed use (including its dramatic traffic impact) the use is more properly classified as an 'I-3'." *See* Reproduced Record (R.R.) at 1037a, 1039a-40a. Similarly, GBCL asserted the zoning permit applications contained false information and were defective and misleading. *Id.* at 1600a. In addition, GBCL asserted "[t]he Department of Licenses and Inspections [(L&I's)] interpretation as to the nature, scope and scale [of] the proposed, approved and permitted use . . . [of the property] . . . conflicts with the use regulations of the I-2 (Medium Industrial) zoning district . . . ." *Id.* at 1601a. Finally, GBCL asserted the proposed uses qualified as intensive industrial uses that are prohibited in the I-2 zoning district. *Id.* at 1602a-03a.

---

[1] City of Philadelphia, Pa., Zoning Code (2012), *as amended*.

The ZBA held a public hearing on Objectors' appeals on April 27, 2021. *See* R.R. at 73a. After hearing opening arguments, the ZBA permitted the City to present the testimony of Cheli Dahal (Dahal), the plans examiner at L&I who reviewed Relteva, LLC's (Landowner) permit applications in this matter. *Id.* at 100a-03a. During counsel for GBCL's cross-examinination of Dahal, the ZBA announced it had run out of time, would have to end the hearing, and would resume the hearing on a later date. *Id.* at 175a.

Rather than simply resuming the hearing and permitting the parties to continue presenting their evidence, however, the ZBA demanded Objectors submit written offers of proof for their witnesses. *See* R.R. at 16a-17a, 1446a-47a. Objectors repeatedly asserted the ZBA could not prohibit them from presenting witness testimony and evidence. *See id.* at 1436a-1490a. Nonetheless, Objectors complied with the ZBA's requests and provided offers of proof for their proposed presentation of evidence. *Id.* at 1483a-90a. Relevantly, Objectors asserted their engineer would testify:

- The proper and accurate classification and consideration of [United Parcel Services' (UPS)] proposed facility as a High-Cube Parcel Hub, not a warehouse, distribution facility and/or trucking and transportation termina[l] for which UPS applied to the City of Philadelphia and was issued permits.

- Traffic associated with a High-Cube Parcel Hub and the high, intensive adverse impact thereof as compared to a warehouse, distribution facility and/or trucking and transportation termina[l] and the limited, moderate impact thereof.

- Traffic and impact associated with I-2 type uses as compared to I-3 type uses.

*Id.* at 1483a-84a. In addition, Objectors asserted their architect would testify:

- How warehousing, distribution and trucking and transportation terminals differ greatly from UPS's proposed High-Cube Parcel Hubs, particularly in terms of intensity of use and their impact. Specifically, that the moderate impacts[] of the former bear little resemblance to the high adverse impact(s) of the large-scale automated High-Cube Parcel Hubs.

- **UPS's proposed High-Cube Parcel Hub at the Subject Premises is an I-3 use, not an I-2 use.**

*Id.* at 1484a (emphasis added).  Finally, Objectors asserted they (the President or Executive Vice President for Sandmeyer, and for GBCL, its President and five members who were either local residents or business owners) would tesify at the hearing. *See id.* at 1436a, 1486a-89a.

In response, Landowner "submitted a 'Motion to Exclude Irrelevant and/or Duplicative Evidence' [in] which [it] challenged [Objectors'] standing and argued that the issues presented and offers of proof made by [Objectors] 'are not relevant to whether or not the plans examiner followed the proper procedure for issuance of the by right permits.'"  R.R. at 17a.  Objectors submitted responses in opposition to Landowner's motion.

When the ZBA resumed its hearing, the ZBA announced it would limit Objectors' remaining cross-examination of Dahal to one-half of one hour.  *Id.* at 213a.  The ZBA also announced it would permit the City's second witness, an L&I supervisor, to "confirm[ L&I's] position that the challenge[d] permits were  . . . properly issued."  *Id.*  Finally, the ZBA announced it would "then hear testimony, limited testimony necessary to establish [Objectors'] standing. **No other testimony will be permitted**."  *Id.* (emphasis added).  Objectors then renewed their objections

to the ZBA's decision to preclude them from presenting witness testimony and evidence.[2] *See id.* at 18a, 226a-27a.

Section 14-103(4)(a) of the Code only permits the ZBA to hear and decide appeals in zoning matters "after public notice and **public hearing**." Phila. Code § 14-103(4)(a) (emphasis added). Section 14-303(14)(d) of the Code establishes that "[a]ll **hearings** [of the ZBA] **shall** be open to the public." Phila. Code § 14-303(14)(d) (emphasis added). The Code does not expressly define a "public hearing." However, the Pennsylvania Supreme Court has long held:

> A "hearing" contemplates more than mere *attendance* by the public; it connotes a meeting which the public has the right to attend *and* the right to be *heard*. As stated in *People v. Richetti*, 302 N.Y. 290, 97 N.E.2d 908, 912 [(1951)]: "A 'hearing' contemplates the right to be present and to put forth one's contentions by proof and argument (Black's Law Dictionary, [3d ed.], p. 882, and cases cited)."

*Appeal of Kurren*, 208 A.2d 853, 856 (Pa. 1965) (footnote omitted). While the Pennsylvania Municipalities Planning Code[3] (MPC) does not govern zoning appeals in the City, Section 107 of the MPC defines a "public hearing" as "a formal meeting held pursuant to public notice by the governing body or planning agency, **intended to inform and obtain public comment**, prior to taking action in accordance with this act." 53 P.S. § 10107 (emphasis added). Thus, the General Assembly codified the rights outlined in *Appeal of Kurren* for zoning hearings under the MPC.

Similarly, the Code requires the ZBA to permit the public to testify and provide input. Section 14-303(14)(e) of the Code, provides:

---

[2]  Objectors also challenged the legality of the ZBA's decision to prohibit them from presenting witness testimony or evidence before the trial court and this Court on appeal.

[3]  Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

**Any organization or member of the public who attends a public hearing** before the Zoning Board ***shall* be permitted to offer testimony** individually regardless of whether the organization, individual or person on whose behalf they are offering testimony has standing to appeal the decision by the Zoning Board to the Court of Common Pleas.

Phila. Code § 14-303(14)(e) (emphasis added). Section 14-201(4) of the Code provides that "shall" is mandatory. Phila. Code § 14-201(4). Additionally, Section 14-303(j) of the Code provides that "attorneys representing applicants or objectors" "**will be permitted to** cross examine, **present evidence**, and request the issuance of subpoenas." Phila. Code § 14-303(j) (emphasis added). Finally, Section 14-303(h) of the Code permits the ZBA to "determine the order of testimony" and "establish time limits on testimony **in order to allow all interested parties to be heard and may, in its discretion, prevent duplicative testimony**." Phila. Code § 14-303(14)(h)(emphasis added).

Therefore, the Code requires the ZBA to accept testimony from all interested parties who attend its public hearings and only permits the ZBA to establish time limits for testimony and prevent testimony that is duplicative. The Code does not allow the ZBA to prevent testimony it perceives as not relevant.[4] This conforms with the Pennsylvania Supreme Court's explanation of the requirements for a public hearing. *See generally Appeal of Kurren*. This also conforms to the general purpose

---

[4]  Even if the ZBA had the authority to prohibit testimony that was not relevant, Objectors were proposing to present relevant evidence. L&I issued the permits in this matter on the basis that Landowner's proposed uses of the property qualified as uses permitted by right in the I-2 district in which the property is located. As fully outlined above, however, Objectors' witnesses would have testified that Landowner's proposed uses of the property qualified as uses that were only permitted by right in the heavy industrial district (I-3). Thus, Objectors' proposed testimony was directly relevant to whether L&I correctly issued permits by right in the I-2 district. *See* Pa.R.E. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

and function of public hearings in zoning matters, which is to allow the parties and the public to present testimony and evidence for the ZBA's consideration.

Here, the ZBA prohibited Objectors from presenting witness testimony or evidence. This was a clear violation of the ZBA's authority. Therefore, I believe we should vacate the trial court's order and remand this matter to the trial court with instructions to vacate the ZBA's order and further remand to the ZBA to conduct a public hearing in accordance with the Code's requirements.

_____
STACY WALLACE, Judge

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CIVIL

IN RE: APPEALS OF
SANDMEYER STEEL COMPANY, Appellant

and

IN RE: APPEAL OF THE GREATER
BUSTLETON CIVIC LEAGUE, Appellant

OPFLD-In Re: Appeal Of Sandmeyer Steel Company



21110097400046

From Decision of
CITY OF PHILADELPHIA ZONING BOARD
OF ADJUSTMENT, Agency Appellee

and

RELTEVA, LLC, Intervenor Appellee

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
_:

**CONSOLIDATED APPEALS:**
**NOVEMBER TERM 2021**
**NO. 00973**(Sandmeyer)
re: ZBA Calendar MI-2021-000876
Subject Premises: 1 Red Lion Rd.
ZBA Denial Decision: 10/13/2021
re Permit #HA-2021-000854

**NOVEMBER TERM 2021**
**NO. 000974** (Sandmeyer)
re: ZBA Calendar MI-2021-000875
Subject Premises 1 Red Lion Rd.
ZBA Denial Decision: 10/13/2021,
re Permit #HA-2021-000851

**NOVEMBER TERM 2021**
**NO. 01073** (GBCL)
re: ZBA Calendar MI-2021-000904
Subject Premises: 1 Red Lion Rd.
ZBA Denial Decision: 10/13/2021
re Permit #HA-2021-000899

**COMMONWEALTH COURT**
**NO.  1004 CD 2022**
**NO.  1005 CD 2022**
**NO.  1009 CD 2022**
**NO.  1010 CD 2022**

## NOTICE OF NO SUPPLEMENTAL 1925(a) OPINION

Upon review of the 1925(b) Statement filed in the above-captioned matter on appeal in the Commonwealth Court of Pennsylvania, this Court has concluded that no supplemental opinion will be issued, as the Court's reasonings, findings, and conclusions of law are found in this Court's Order and Memorandum dated and docketed on August 18, 2022 (see attached). Therefore, said Memorandum and Order shall stand in *lieu* of an Opinion.

BY THE COURT:

_____ J.

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  D. KELLY  10/25/2022

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CIVIL

IN RE: APPEALS OF
SANDMEYER STEEL COMPANY, Appellant

&

IN RE: APPEAL OF THE GREATER
BUSTLETON CIVIC LEAGUE, Appellant

From Decision of
CITY OF PHILADELPHIA ZONING BOARD
OF ADJUSTMENT, Agency Appellee

&

RELTEVA, LLC, Intervenor Appellee

: **CONSOLIDATED APPEALS:**
: **NOVEMBER TERM 2021**
: **NO. 00973**("Sandmeyer")
: re: ZBA Calendar MI-2021-000876
: Subject Premises: 1 Red Lion Rd.
: ZBA Denial Decision: 10/13/2021
: re Permit #HA-2021-000854
:
: **NOVEMBER TERM 2021**
: **NO. 000974** ("Sandmeyer")
: re: ZBA Calendar MI-2021-000875
: Subject Premises 1 Red Lion Rd.
: ZBA Denial Decision: 10/13/2021,
: re Permit #HA-2021-000851
:
: **NOVEMBER TERM 2021**
: **NO. 01073** ("GBCL")
: re: ZBA Calendar MI-2021-000904
: Subject Premises: 1 Red Lion Rd.
: ZBA Denial Decision: 10/13/2021
: re Permit #HA-2021-000899

ORDER-In Re: Appeal Of Sandmeyer Steel Company



21110097300053

## ORDER

AND NOW, this 18th day of August 2022, upon consideration of the Appeals filed on behalf of Sandmeyer Steel Company and the Greater Bustleton Civic League, seeking reversal of the decision rendered by the City of Philadelphia Zoning Board of Adjustment which had affirmed the issuance of "by right permits" by the City of Philadelphia Department of Licenses and Inspections for the proposed unity of use and industrial development of adjoining contiguous land parcels located at One Red Lion Road and 10098 Sandmeyer Lane in Northeast Philadelphia to

Applicant and Intervening Appellee, Owner, Relteva LLC, the responsive pleadings and incorporated exhibits thereto, including the Certified Record of all relevant proceedings, and oral arguments that had been tendered during the hearing held before this Court on June 29, 2022, and the subsequent filing of the respective Motions seeking Reconsideration and Redaction of the Order that had been entered by this Court on July 19, 2022, it is hereby ORDERED and DECREED that the respective appeals of Sandmeyer Steel Company and the Greater Bustleton Civic League are DENIED for lack of merit.

It is further ORDERED and DECREED that the contested decision of the City of Philadelphia Zoning Board of Adjustment ("ZBA") is AFFIRMED as follows:

Substantial evidence supported the ZBA's affirmation of the issuance of the subject "by right" permits. The ZBA's determination to confer standing to Appellant Sandmeyer Steel Company ("Sandmeyer") as an aggrieved party to contest the issuance of the permits involving the proposed driveway development and the unity of use upon which the driveway development depends was also defensible. The ZBA's decision however to confer standing upon Appellant, The Greater Bustleton Civic League ("GBCL"), is affirmed with considerably less confidence.

Appellant GBCL presented itself as a nearby civic organization with a generally stated concern regarding the predictable impact from increased traffic from the United Parcel Service distribution center. However, given the minimal debate that had been raised during the proceedings concerning standing based on prospective increased traffic, the ZBA's decision to award standing to GBCL is given due deference and will not be disturbed. This Court cautions all parties and the ZBA that Pennsylvania appellate courts have expressed strict standards of what constitutes an "aggrieved party" well beyond what had been deemed required in the past.

2

## MEMORANDUM

The legal conclusions and supporting analysis that had been submitted on behalf of the Zoning Board of Adjustment as well as the respective arguments that had been proffered on behalf of the City of Philadelphia and Intervenor Appellee Relteva are largely incorporated into this Court's findings and rationale which are summarized below with reservation of supplementation:[1]

### A. FACTUAL AND PROCEDURAL HISTORY

It is uncontested that both subject land parcels are adjoining and owned by Applicant Relteva and remain zoned *Industrial-2 Medium* pursuant to existing zoning regulations promulgated by the City of Philadelphia. Historically, these two properties have well-established industrial contiguous uses in varied capacities by prior owners. The Budd Company had operated a large industrial plant to manufacture and distribute railroad cars. Thereafter, the land lay vacant for quite some time until both parcels were transformed with the aid of unique industrial zoning variances that had been granted to facilitate the Island Green Clubhouse and golf course with golf training facilities.

After the Island Green ventures failed, the parcels remained unoccupied with empty buildings until their purchase by a Delaware Corporation, Teva Pharmaceutical Company USA, INC. ("Teva") to manufacture or distribute approved drugs. About two years into the project, however, Teva changed course and pulled out of their intended industrial production designs. The land and improvements lay dormant again. On or about March 1, 2018, Teva sold both adjoining properties with the improvements located thereon to Applicant and Intervenor/Appellee, Relteva, LLC. ("Relteva") for at least $18,000,000.00.

---

[1] This Court specifically excludes from its incorporated findings the multiple erroneous dates that are referenced within the ZBA's submitted findings of fact and any similarly misstated dates that have been referenced within the pleadings and briefs of the parties.

3

From the outset, the expressed purpose of this purchase via Special Warranty Deeds of the still adjoining properties was to develop both parcels for their tenant, United Parcel Service ("UPS"). Relteva had entered into an agreement with UPS for leasing of both properties as a warehousing, distribution and trucking facilities and hub. The larger of the two parcels known as "One Red Lion Road" spans approximately 5,632,314 square feet and extends from northeast Philadelphia County to Montgomery County. The parcel known as '10098 Sandmeyer Lane" adjoins One Red Lion Road on the far northwest corner and spans approximately 60,926 square feet.

On April 2, 2020, Appellee Relteva, LLC, on behalf of United Parcel Service, by and through plans that had been prepared on March 4, 2020 by Kevin Tatlow, DBA Bohler Engineering Inc., applied for a Zoning/Use registration permit to facilitate development of both parcels for warehouse, distribution, trucking and transportation terminals with accessory offices and vehicle services and maintenance with accessory structures. This Application assigned to Permit Number ZP-2020-000653 according to commonly referenced zoning parlance was a request for "matter of right" or "by right" *Industrial-2 (Medium)* permission of uses and structures as "Unity of Use." The proposed permit was essentially seeking zoning recognition of the continuous utilization and single ownership of both lots supported by the necessary agreements, covenants and easements record deeds to limit present and future owners. The Application also sought demolition of all existing structures and outlined the erection of one (1) story/partial two (2) story detached structure and for the erection of accessory structures.

After thorough review of the submitted materials, on December 30, 2020, Zoning Permit ZP-2020-000653 was issued by the duly designated inspectors on behalf of the City of Philadelphia Department of Licensing and Inspection. This permit approved the requested establishment of

4

"Unity of Use" permission for both parcels to become a single *Industrial-2 Medium* Zoned lot. The resulting creation of one zoned lot incorporated the associated restrictive, binding and deed recorded covenants and agreements from the two contiguous and jointly owned and same *Industrial-2 Medium* zoned parcels and approved the Trucking and Transportation Terminals, Wholesale, Distribution and Storage and Warehouse uses. Appellants filed appeals to the issuance of this permit on January 21, 2021.

The second subject "by right" Zoning Permit that had been issued on December 23, 2020 under ZP-2020-010545 had granted Relteva's Application of March 31, 2020. This issuance had also occurred after extensive review. This Permit approved development for Relteva's "complete demolition of all existing structures on the lot; for the erection of one (1) one story/partial two (2) story detached structure for the erection of accessory structures, size and location as shown in the application for approved uses of "Trucking and Transportation Terminals, Wholesale, Distribution and Storage-Warehouse." This permit also further detailed uses:

> "For a warehouse, distribution and trucking and transportation terminal with accessory offices and vehicle services and maintenance with accessory structures for employee access; maintenance and accessory vehicle fueling (providing gasoline, diesel, one dispenser and CNG station) and wash station with 1,827 accessory parking spaces (956 employee spaces, 737 trailer spaces and 134 tractor spaces) 101 bicycle spaces and 25 loading spaces SPACES...Amended permit Language as per CIV design review committee, accessory retail spaces and office use are proposed in the accessory structure and additional landscaping has been proposed."

The appeals of the issuance of this permit were filed no earlier than January 21, 2021. After bifurcated hearings had been held and considerable arguments had been presented in writing and verbally, the ZBA denied the appeals and affirmed the decision of the City of Philadelphia Department of Licenses and Inspections to issue both "by right" permits on October 13, 2021.

5

Both GBCL and Sandmeyer filed appeals to the Court of Common Pleas for the First Judicial District of Pennsylvania. After delay not attributable to Relteva, the agency appeals were formally consolidated to facilitate non-duplicitous arguments. All three cases were transferred to this Court as the duly assigned jurist to the Motions Unit of the Civil Division of the Court of Common Pleas for the First Judicial District of Pennsylvania. Protracted arguments were presented during hearing held on June 29, 2022 after the scheduled filing of respective supportive memoranda and exhibits and the Certified Record.

On July 19, 2022, this Court had entered an Order denying all appeals along with supporting Memorandum. On July 22, 2022, a Miscellaneous Motion to Correct Order was filed on behalf of Relteva seeking redaction of a full paragraph that had been recited on Page 7 Section C of the Order of July 19, 2022 and requesting full force and effect of the remaining terms of the subject Order and Memorandum. On August 2, 2022, Appellant Sandmeyer filed a Motion for Reconsideration seeking that the Order dated July 19, 2022 be vacated in its entirety and for a reopening of the issues that had been raised in its Motion. On August 9, 2022, Relteva filed an Appellee's Answer in Opposition to the Motion for Reconsideration. No Motion was filed on behalf of Greater Bustleton Civic League. The Motions were respectively assigned to this Court on August 15, 2022.

On August 11, 2022 a Notice of Appeal was filed on behalf of Greater Bustleton League to the Commonwealth Court and subsequently somewhat ironically sent via U.P.S. after payment to the Commonwealth Court of Pennsylvania. On August 17, 2022, this Court filed the Order that granted some of the requested forms of relief that had been referenced within the Motion to Reconsider and the Motion to Correct and VACATED the Order that had been entered on July 19, 2022 in all consolidated appeals. On August 18, 2022 this Court electronically received Notice of

6

Appeal that had been filed on behalf of Sandmeyer Steel on August 17, 2022. The instant Order and supporting Memorandum is entered on August 18, 2022.

B. STANDING:

Appellant: Sandmeyer Steel Company ("Sandmeyer"): Sandmeyer leases and operates a steel manufacturing company at 10050 Sandmeyer Lane which is located across from and adjacent to the subject parcels. Sandmeyer's complaint establishing their standing as an aggrieved party stems from their proffered expectation of impact to Sandmeyer's previously established industrial traffic flow from the driveway development at Relteva's parcel on 10098 Sandmeyer Lane. This prospective effect was sufficiently presented to the ZBA.

Appellant: Greater Bustleton Civic League ("GBCL"): GBCL reports as a Pa. non-profit corporation with a registered business address at 9980 Haldeman Avenue, Philadelphia, and is a duly registered community organization in accordance with Title 14 (City of Philadelphia Zoning Code, section 14-303 (11a). The geographical perimeters of this organization, as publicly posted in their by-laws, lie between Pine Road to the Boulevard from east to west and between Red Lion Road to Pennypack Park from north to the south. GBCL, like Sandmeyer Steel, have conceded that their perimeters do not encompass either subject parcel. GBCL reported to the ZBA that at its closest point, its membership lived or worked nearby or adjacent to the southern end of the more expansive lot at One Red Lion Road.[2] GBCL noted that Relteva had invited their organization other civic groups and general community members to attend their early outreach efforts during development stages. GBCL reasoned that their members would expect to be affected at some time in the future by a resulting increase of traffic from the large UPS facility. This natural concern is akin to the same apprehension that could be reasonably proffered by many persons who shall

---

[2] Notably, the civic association that covers the properties at issue did not file any appeal.

7

traverse the surrounding roads in this large section of Northeast Philadelphia once the UPS facility is built.

## C. MERIT

The validity of ZBA's affirmation of the grant of the permits by the assigned City of Philadelphia License and Inspection officials depends upon statutory interpretation of applicable sections of the City of Philadelphia Zoning Code. The ZBA's determination properly began and ended with their review of the legality of the permits as applied pursuant to the existing zoning regulations that had controlled their grant. This Court's review of ZBA's decision is analogous to that of an appellate court of a trial court's legal ruling with due deference being accorded to fact finding determinations.

Appellants' main cause of contention and single source of standing is the naturally expected impact of increased traffic to the surrounding neighborhoods from the overall development of the UPS hub especially from the planned driveway construction and exit from the Sandmeyer lot. To support their claims, Appellants, especially Sandmeyer Steel, relied upon vague provisions of the Philadelphia Zoning Code and upon the contradictory assertion of application and interpretation of the conflicting "Far Northeast Overly" which is a Zoning Ordinance codified in Philadelphia Zoning Code, 14-514(2)(a) et sq. to contest the original issuance of both "by right" permits on December 23, 2020 and December 30, 2020.

Appellants' references to the terms of the Section 14-514 entitled "FNF, Far Northeast Overlay District" of Chapter 14-500 Philadelphia Code entitled "Overlay Zoning Districts as Amended and revised by Bill No. 2104425 without indicia of historical references had caused this Court to believe that Appellants had mistakenly relied upon the version of the Section 14-514 that

8

had not been signed and certified into existing law by the Mayor of City of Philadelphia after passage by City Council until June 23, 2021 which was over a full year after the permits had been issued.

The Motion for Reconsideration filed on behalf of Appellant Sandmeyer and the Motion to Correct Order filed on behalf of Appellee Relteva, LLC clarified this Court's misperception. The parties had attached Exhibits of a prior version of Section 14-514 entitled "FNF, Far Northeast Overlay District" that had been enacted in 2013 and a copy of the 2021 version that had admittedly not been in effect at the time of the issuance of the permits. The motions and exhibits corrected this Court's understanding of the provision's history and amended this Court's view of the litigants' arguments. Both versions of Section 14-514 entitled "FNF, Far Northeast Overlay District" that had been attached as filed Exhibits are incorporated into this Court's analysis as if set forth in full.

Upon further review, this Court however remains in complete disagreement with Appellants' overall reliance upon the 2013 application of Section 14-514 entitled "FNF, Far Northeast Overlay District," in either form as well as Appellants' interpretation of other conflicting provisions of the Zoning Code. Specifically, the 2013 version of Section 14-514 entitled "FNF, Far Northeast Overlay District" as drafted did not justify Appellants' contention that a special variance had been required for grant of one of the original permits to Relteva. That requirement did not apply because it had not been contained in the 2013 version. More importantly this special variance requirement language had been specifically added in the 2021 Amendment as part of the attempt of members of Philadelphia City Council to clarify the inherent vagueness of that section.

Moreover, Appellants' bootstrapped claim that every provision of the regional overlays necessarily overrides every conflicting specific Zoning Code provision particularly those related

9

to primarily permitted trucking facility uses and operations is flawed from the outset because of the language ambiguities that had been drafted within the labyrinth-like Philadelphia Zoning Code and the regional Overlay Sections. This lack of clarity upon which Appellants have depended, is vividly illustrated by the 2021 alterations that had been made to Section 14-514 entitled "FNF, Far Northeast Overlay District.

While the 2013 version of Section 14-514 entitled "FNF, Far Northeast Overlay District" does generally list a litany of prohibited uses including "commercial vehicle repair and maintenance," it failed to provide sufficient intelligible guidance to permit applicants and reviewing inspectors and invited multiple interpretations. Reasonable definitions of salient terms and logical references as to when, where and how the prohibited uses had applied remain omitted. Remedies regarding operation and coordination of specific conflicting provisions have not been reasonably included. Only vaguely stated provisions subject to differing interpretations have identified the interplay between the regional overlays and the zoning code provisions.

In short, like so many other sections of the Philadelphia Zoning Code, the regional overlay provisions are clear as mud and inviting of unnecessary litigation and constitutional attacks. This case is a vivid demonstration of the costly result of poorly drafted statutory language. For the past two plus years, the properly permitted "by right" construction of both large contiguous singularly owned Industrial Zoned sites has been stalled. The debate over relatively minor conflicting zoning provisions has blocked much needed community benefits to this city, particularly in the form of jobs, tax revenues and transportation coordination.

The revised 2021 version of Section 14-514 entitled "FNF, Far Northeast Overlay District revealed the incongruities of this debated Section. Philadelphia City Council apparently recognized and later attempted to correct the deficiencies by the adding language in 2021 that both

10

specified where the prohibited uses are to be applied and when a special variance are required. Notably, the 2021 revision had not been available at the time of Relteva's Application. Even if it had been in place, the post application changes provide little guidance to future applicants or interpreting inspectors and reviewers.

Rather, the amendments themselves illustrated the reasonableness of the differing interpretations that had been applied by the original inspectors and by the ZBA of Relteva's permit applications. Frankly, it would have been illogical and unfair to grant the primary and clearly permissible by right uses for the proposed trucking facility and then simultaneously prohibit expected minor or ancillary uses of washing, gas filling and minor repairs of UPS traveling trucks on this large parcel of land. In this case, the interpretation of the assigned inspectors and of the reviewing ZBA of the inherently vague provisions and particularly of the subject phrases involving onsite gasoline filling, washing and repair of commercial vehicles had been reasonable, fair and logical.

Moreover, zero nexus of aggrievement or prejudice had been established by either Appellant from UPS's plans to provide onsite fuel and minor repairs for its own vehicles. The self-imposed restriction of these fueling, minor repairing and cleaning uses to within the large area onsite would greatly benefit the surrounding communities by considerably lessening traffic. Appellant's contradictory claim has undercut their proffered standing position.

Appellants also claimed that permission of "Unity of Use" for zoning uses should have been denied because the approval would create a "subdivision" as defined within the Zoning Code provisions. To support this argument that recognition for zoning purposes of the contiguous combination of the two same zoned parcels should have been prohibited, Appellants extrapolated a portion of the Zoning Code definition of the term "Subdivision" to claim inclusivity of any

11

changing lot lines regardless of size. This interpretation is misleading and lacking in contextual understanding of the entire, all be convoluted, definition of "Subdivision" and paragraphs outlining Subdivision Controls in Sections in the Philadelphia Zoning Code, 14-2102-14-2103.

Plain reading of the entire sentence highlighted City Council's intention to define the word "subdivision" naturally. The grammatically correct meaning of the word subdivision is to divide or split into smaller parts. The quoted phrase encapsuled within the sentence by commas referencing change of lot lines is simply listed as an example of one of the methods by which a subdivision can be created. Isolation, or dare I say, subdivision, of this phrase from the full contextual meaning and the rest of the sentence as suggested by Appellants is not reasonable or logical.

In the instant matter, both adjoining parcels remain singularly owned and equally zoned as *Industrial-2 Medium* consistently in line with current and historically permitted industrial uses of both lots by prior owners. The well established by-right type of permit included self-restrictive covenants and agreements that are binding upon present and future owners. With the issuance of the unity of use permits, the proposed development of the driveway as an accessory use for the UPS facility had complied with all zoning restrictions by right. Thus, there was no need for a variance under the circumstances and no resulting relevant justification for introduction of Appellant's proffered additional evidence.

Appellant GBCL broadly averred vacillating unspecified "suspected" misconduct had occurred within the licensing process. They even claimed a lack of Civic Design review when it had been obvious that no steps had been missed in the application process. Testimony that had been introduced at the insistence of GBCL from the assigned and supervising inspectors that had handled the issuance of the subject permits. These witnesses were deemed credible and competent

12

evaluators of the validity of the permits by ZBA as fact finder. This evidence as introduced during the bifurcated hearings had revealed that the inspectors had diligently assessed the permit applications and that the entire process had been in accordance with proper protocols.

The GBCL's additional complaint of being subjected to unfair time restrictions by the ZBA was also contradicted by the record which reflected ZBA's reasonable response to Appellants' arguments as presented. Finally, ZBA's denial of Appellants' proffered subpoenas and related requests to introduce "Traffic Experts" etc. was justified because the proffered reasoning for the proposed evidence had failed to reveal any relevant purposes.

In short, the ZBA justifiably determined that the "by right" permits had been issued in accordance with existing zoning ordinances as reasonably interpreted by the duly assigned evaluators who had acted well within their proficiency and experience. This reviewing Court had also detected no error at any point in the decision-making process concerning the approval of permit applications. To the contrary, the record reflects that the by-right permits had been properly issued in accordance with the then prevailing provisions of the Philadelphia Zoning Code Section 14-3030(6)(d) et seq. Thus, the ZBA's conclusions and underlying rationale are affirmed. Appellants failed to demonstrate any justifiable cause for relief.

**BY THE COURT:**

13